Nicholas R. SABATINE, Jr. and Concetta Sabatine, his wife, Appellants,

v.

The ZONING HEARING BOARD OF WASHINGTON TOWNSHIP, Donna M. Bonnema, Stuart M. Dworeck, Kurt A. Oliver, Santo Dotta, Bruce C. Wilhelm, Frank J. Terplan, Washington Township Board of Supervisors.

Nicholas R. SABATINE, Jr. and Concetta Sabatine, his wife

v.

The ZONING HEARING BOARD OF WASHINGTON TOWNSHIP.

Donna M. BONNEMA, Stuart M. Dworeck, Kurt A. Oliver, Santo Dotta, Bruce C. Wilhelm, Frank J. Terplan, Mark Gibbons, Truman Summit, Appellants,

v.

The ZONING HEARING BOARD OF WASHINGTON TOWNSHIP.

Commonwealth Court of Pennsylvania.

Argued May 10, 1994.

Decided Dec. 13, 1994.

---

Nicholas R. Sabatine, III, for appellants Nicholas R. Sabatine, Jr. and Concetta Sabatine, his wife.

Peter C. Layman, for appellants Donna M. Bonnema et al.

David J. Ceraul, for appellee, the Zoning Hearing Bd. of Washington Tp.

Before DOYLE and COLINS, JJ., and DELLA PORTA, Senior Judge.

DELLA PORTA, Senior Judge.[1]

Nicholas R. Sabatine, Jr., and his wife, Concetta Sabatine (the Sabatines) and Donna M. Bonnema, Stuart M. Dworeck, Kurt A. Oliver, Santo Dotta, Bruce C. Wilhelm, Frank J. Terplan, Mark Gibbons, and Truman Summit (the neighbors) have cross appealed from the August 19, 1993 order of the Court of Common Pleas of Northampton County (trial court) which affirmed the decision of the Washington Township Zoning Hearing Board (Board), granting a special exception to the Sabatines subject to certain conditions. The trial court also determined that the Sabatines' proposed use complied with applicable parking requirements.

The Sabatines applied for a special exception with the Board in order to conduct a flea market on their seven-acre tract of land located in the Rural Center (RC) District of Washington Township (Township). After the Board granted the special exception with conditions, both the Sabatines and the neighbors appealed to the trial court. The trial court required that additional testimony be taken by a master, after which the court issued its decision on November 20, 1991 affirming the decision of the Board. The trial court did not consider certain of the additional testimony because that deposition testimony had not been filed and, therefore, was not part of the record. Both the Sabatines and the neighbors appealed to this Court, which vacated the trial court's order and remanded for de novo consideration of the entire record, including the deposition testimony which had not been previously considered.[2] In reviewing the entire record, the trial court determined that it was presented for the first time with the neighbors' challenge that the Sabatines had not complied with the parking requirements of the Township's Zoning Ordinance (Ordinance). The trial court remanded the matter to the Board for a determination, which thereafter decided that the Sabatines' proposal did not comply with the parking requirements of the Ordinance. The Sabatines timely appealed that determination to the trial court.

On August 19, 1993, the trial court issued its decision and order with respect to all of the issues before it. The trial court determined that the Board had properly granted a special exception to the Sabatines. Noting that the Ordinance does not specifically designate flea markets as a permitted use or use by special exception, the trial court agreed with the Township's solicitor that the proposed use is a planned development, that is, it is a tract of land containing a combination of two or more uses permitted by right or as a special exception in the district in which it is located and that the flea market combined the uses of restaurant and wholesale trade. The trial court, therefore, granted the special exception and also affirmed the conditions imposed by the Board on the grant of the special exception.[3]

Finally, the trial court addressed the parking issue and determined that the Board erred in concluding that the Sabatines had not complied with the requirements of the Ordinance. Finding that the parties agreed that the parking requirements should be analyzed pursuant to the Ordinance's retail store

---

1. This case was reassigned to the author on September 22, 1994.

2. On April 6, 1992, the neighbors filed in this Court a Motion To Request Transcripts of Stanley Lysek dated June 12, 1991 Be Made Part of the Record. After this Court consolidated the Sabatines' and the neighbors' appeals by order dated April 9, 1992, President Judge Craig granted the neighbors' April 6, 1992 motion and vacated the order of the Court of Common Pleas of Northampton County dated November 20, 1991, and remanded the case for reconsideration of the entire record.

3. The trial court modified condition number four to require only those food vendors and concessions requiring permission or license from the Department of Environmental Resources (DER) to obtain such approval prior to be permitted to operate in the proposed flea market and allowing "[t]hose food vendors or concession operations not requiring DER approval shall, assuming compliance with all federal, state and local regulatory direction, be permitted to operate in the proposed flea market." Trial Court's Opinion, p. 10.

and general merchandise store requirements, the trial court calculated that the Sabatines had provided 109 more parking spaces than required by the Ordinance. The trial court rejected the neighbors' position that the Sabatines needed an allotment of parking spaces for inventory use and concluded that the Sabatines had complied with the applicable parking requirements.

On appeal to this Court, the numerous issues raised by the parties may be summarized as follows: 1) whether the trial court used the appropriate scope of review; 2) whether the trial court erred in determining that the proposed flea market use is a planned development which is a permitted use by special exception in the RC district; 3) whether the trial court abused its discretion in imposing conditions upon the grant of the special exception; and 4) whether the trial court erred in determining that the Sabatines had complied with the Ordinance's parking requirements. We will address these issues seriatim.

Section 1005–A of the Municipalities Planning Code (MPC), 53 P.S. § 11005–A, entitled "Hearing and argument of land use appeal," provides in relevant part:

> If, ... it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence ... [T]he court shall make its own findings of fact based on the record below and as supplemented by the additional evidence....

■ In *De Cray v. Zoning Hearing Board*, 143 Pa. Commonwealth Ct. 469, 473, 599 A.2d 286, 287 (1991), this Court held that our scope of review in zoning cases was dependent upon whether or not the trial

court had taken additional evidence, and thus:

> Where the trial court does not take additional evidence, this Court reviews the decision of the Board to determine whether the Board committed an error of law or a manifest abuse of discretion. However, *where the trial court does take additional evidence, it must decide the case de novo, and this Court must determine whether the trial court committed an error of law or an abuse of discretion.* (citations omitted).

■ Our review of the record shows that the trial court reviewed the entire case de novo with respect to both issues in dispute in this land use appeal, that is, the grant of the special exception and compliance with the parking requirements.[4] Because we believe that the trial court utilized the proper scope of review, we thus reject the neighbors' contention to the contrary as meritless. Accordingly, our scope of review will be to determine whether the trial court committed an error of law or abused its discretion. *De Cray.*

The next issue raised by the neighbors is whether the trial court erred in determining that the Sabatines proposed flea market was a "planned development",[5] consisting of a restaurant use and a wholesale trade use, which is permitted by special exception in an RC district. Although the neighbors agree that the Ordinance neither defines nor specifically allows a flea market as a permitted or special exception use in any zoning district, they argue that the trial court erred in determining that the proposed flea market use fell within the definition of "warehouse and wholesale trade" use under the Ordinance, as one of the two permitted uses that make up

---

4. Although the trial court did not specifically identify or set forth its findings of fact, as it is required to do when it decides the case *de novo*, a remand to the trial court is not warranted where the trial court's opinion and uncontradicted evidence provide a sufficient basis for this Court's review. *De Cray*, 143 Pa. Commonwealth Ct. at 475, 599 A.2d at 289. Having reviewed the trial court's opinion, we believe its statement of the facts as well as the evidence of record provide a sufficient basis for this Court to conduct a proper appellate review, and therefore, a remand is not necessary.

5. A "planned development" is defined in the Ordinance as "[a]n area of land under single ownership containing any combination of two (2) or more principal uses permitted by right or as a special exception in the district in which the development is proposed, provided a special exception use approval must be obtained for any proposed use so listed in the regulations of the district in which the development is proposed." Section 2.1 B.110.

the planned development. The neighbors assert that the proposed use flea market would more logically fit under the category of a "farmers' market," which is defined in Section 3.10.C.3 of the Ordinance as "an area where agricultural, horticultural and animal husbandry products are sold by two or more enterprises."

■ The question of whether a proposed use falls within a given category specified in an ordinance is a question of law. *Danwell Corp. v. Zoning Hearing Board of Plymouth Township*, 115 Pa. Commonwealth Ct. 174, 540 A.2d 588, *petition for allowance of appeal denied*, 520 Pa. 620, 554 A.2d 511 (1988). This issue is one of statutory construction in which the function of this court is to determine the intent of the legislative body which enacted the ordinance. Accordingly, the court is bound by the definition of the terms in question as the ordinance itself defines them. However, where the "ordinance does not specifically define the term sought to be construed, and the words are ones in common usage, they are to be given their common usage meaning." *Id.* at 184, 540 A.2d at 593.

■ In the matter *sub judice*, we are guided by Section 1.5 B. of the Ordinance, relating to interpretation, which states that "[a]ny list of permitted or prohibited uses is not an exhaustive list, but is included to clarify, emphasize and illustrate, by example, uses which are desirable or undesirable." Among the uses permitted by right in the Township's RC district include: auto, recreational vehicle, or boat sales, medical office, mobile home, motor freight terminal, picnic grove, restaurant, warehouse and wholesale trade. Section 3.9 B. Accordingly, the trial court determined that the proposed flea market combined two uses permitted in the RC district, namely, a restaurant and wholesale trade. While the ordinance does contain a definition for warehouse and wholesale trade, it is at most an inadequate definition, and at best, a partial one. By defining the term

"warehouse and wholesale trade" as a "building or group of buildings primarily used for the commercial storage, transfer and distribution of products and materials," the ordinance is only defining the term "warehouse," and only as a *noun*. It totally ignores the definition of the rest of the term, "wholesale trade." It also ignores the definition of the term "warehouse" itself, as a *verb*, as well as a definition of the whole term taken together, as a whole, which is not a *structure*, i.e., "a building or group of buildings," but an *activity*.

Confronted with this deficiency, the trial court was in full compliance with the law when it gave the term in question its common usage meaning,[6] noting that the Ordinance's definition of "warehouse and wholesale trade" was inadequate to describe a flea market, but finding "that the proposed flea market use is sufficiently analogous to the common understanding of the word 'wholesale,' that is, direct distribution of merchandise to the consumer without a retailer" that it qualified as a wholesale trade use. (Trial Court's Opinion, p. 8.) Moreover, we disagree with the neighbors' contention that a flea market is more analogous in use to a "farmers' market," as that use is defined in the Ordinance, and believe that a flea market is a use that is desirable and consistent with the stated purposes of the RC district.[7] Hence, we conclude that the trial court did not err in granting the Sabatines a special exception.

Next, we are faced with the Sabatines' contention that the trial court erred in imposing conditions upon the grant of the special exception. The Sabatines argue that the trial court's decision is not supported by substantial evidence and that in particular, certain of the conditions imposed were completely unsupported by any evidence of record. Specifically, the Sabatines argue that the trial court abused its discretion in imposing the condition requiring that they construct a new on-site sewage disposal system

---

6. Article 2, Section 2.1 A.7 of the Washington Township Zoning Ordinance states that "[a]ny word or term not defined in this Ordinance shall be used with a meaning of standard usage."

7. The stated purpose of the RC district is "to provide for the central location of convenience commercial and service uses and other uses in rural farming areas." Section 3.9 A. of the Ordinance.

because the evidence shows that the DER had approved the use of an existing sewage system on an adjoining tract of land to service the flea market,[8] and because matters of sewage disposal are within the jurisdiction of the DER in accordance with the Township's Sewage Plan, and therefore not matters of zoning.

The record reveals that the Sabatines propose to use two bathrooms, without sinks, in an existing building located on an adjoining parcel, to service the flea market. Furthermore, at the May 19, 1991 meeting of the Board of Supervisors, the Sabatines' temporary sewer permit was revoked, on the grounds that the proposed use as a flea market did not fall within one of the exceptions to Section 71.63(f) of the DER's regulations, 25 Pa.Code § 71.63, allowing the issuance of a temporary sewage permit for use at a construction site, a public gathering site or an entertainment site only. In addition, the Sabatines admitted in their brief on appeal that they had applied for a permit to build a permanent on-site sewage disposal system. Therefore, we conclude that the trial court did not abuse its discretion in imposing conditions 5 and 6, relating to construction of a new on-site sewage disposal system, and therefore leave these conditions intact.

■ Next, the Sabatines argue that the trial court again abused its discretion in imposing condition number 11, restricting the days and hours of operation of the flea market to three days per week from 7:00 a.m. to 2:30 p.m. In supporting its decision, the trial court explained that due to the numbers of people visiting the flea market along with the attendant increase in the volume of traffic, that the flea market would "necessarily have an adverse impact upon the surrounding residents' quiet enjoyment of their premises." (Trial Court's Opinion, p. 11.) The Sabatines counter that the Board of Supervisors anticipated that by allowing a planned development as a special exception use, it would generate a normal amount of noise and traf-

fic, *see, e.g., Fantastic Plastic, Inc. v. Zoning Hearing Board of Adjustment,* 16 Pa. Commonwealth Ct. 455, 332 A.2d 577 (1975), and that there is no evidence in the record that an "abnormal amount" of either traffic or noise would be created by allowing the flea market to be conducted on their property. We agree.

At the Board's March 19, 1991 hearing, several of the objectors to the proposed flea market testified in opposition to the flea market because, in the testimony of one neighbor, Linda Peck, "more traffic is going to cause more accidents" and "dust is going to be a real nuisance in our homes" and "[w]e're concerned about the litter blowing about the community and having to clean up our lawns." March 19, 1991 Hearing, N.T., pp. 43–45. Several objectors also testified that they were worried that the overflow of cars from the parking lot in the flea market would cause people to park on the street or on their lawns. In response to these concerns, the Sabatines stated at the hearing that they had provided for more than the required number of parking spaces on the property to accommodate potential customers, that they had proposed to plant trees around the perimeter of the property in addition to a stone fence already in existence to prevent noise and litter from traveling off the property, and that they proposed to build a fence with plastic lining along their property line that adjoins Kurt Oliver's property for these same reasons. *Id.,* pp. 31–32. Mr. Sabatine also indicated that he had a highway permit for the property issued by the Department of Transportation. *Id.,* p. 15.

In *Van Sciver v. Zoning Board of Adjustment,* 396 Pa. 646, 152 A.2d 717 (1959), our Supreme Court was faced with a similar issue with respect to that Board's imposition of conditions to its grant of a variance to Van Sciver restricting the hours of operation of his proposed laundromat from 8:00 a.m. to 8:00 p.m., Monday through Saturday. The

8. The DER's approval that the Sabatines rely on, is set forth in a letter from David C. Walbert, Water Quality Specialist Trainee, dated March 15, 1991, and states in pertinent part:

. . . .

The existing sewage system and permitted capacity should be evaluated by the Washington Township Sewage Enforcement Officer to confirm that the proposed 3500 gpd from the flea market can be adequately treated by the existing system.

court determined that the condition restricting the hours of operation denied Van Sciver the use of his property "when other automatic hand laundries ... [were] in operation...." and that such a condition was an "unreasonable intermeddling with the applicant's property." 396 Pa. at 656, 657, 152 A.2d at 723, 724.

In the matter *sub judice*, we are dealing with the grant of a special exception which we believe the Sabatines are entitled to under the Ordinance. Considering that any restrictions imposed must be reasonable and considering the lack of evidence that the proposed flea market use will create an abnormal amount of traffic or noise affecting the surrounding properties, we conclude that the trial court abused its discretion in imposing condition number 11 upon the grant of the special exception and therefore we strike this condition.

■ Finally, the Sabatines also urge this Court to reverse the trial court's imposition of condition number 12, which prohibits them from allowing produce to be sold at the flea market. According to the Sabatines, there is no evidence of record to support this condition. However, the trial court found, as do we, that it does no more than require that the Sabatines comply with the relevant portions of the Ordinance. The Township's Zoning Officer, Stanley Lysek stated that if produce were to be sold at the flea market, it would then transform the use to a farmers' market, in that produce, as an agricultural product, is or may be one of the products sold at a farmers' market. Because a farmers' market is not allowed as either a permitted use or use by special exception in the RC District, the trial court concluded that selling produce would be prohibited under the Ordinance. We see nothing unreasonable in the trial court's conclusion that this condition is reasonable and we will therefore leave this condition intact.

■ The last issue to be discussed involves the determination by the trial court that the

Sabatines had in fact complied with the applicable parking requirements of the Ordinance. The trial court found that the parties had agreed that, absent a specific parking requirement for flea markets, the Ordinance's "retail store; general merchandise store" requirements would apply to the Sabatines' planned development. Table 7.1.E.11 of the Ordinance provides that the developer provide one off-street parking space for each one-hundred and fifty (150) square feet [9] and one off-street parking space for every two employees. The trial court then calculated that based on 211 vendor spaces measuring ten feet by ten feet, for a total of 21,100 total square feet necessitating 141 parking spaces and a total of 422 employees necessitating 211 employee parking spaces, that the total number of parking spaces required under the Ordinance would be three hundred and fifty-two (352). Because the Sabatines had proposed four hundred and sixty-one (461) spaces, the trial court concluded that they had met the Ordinance's parking requirements. We agree.

Once again we are faced with a situation in which the Zoning Ordinance does not specifically provide for any parking requirements for the proposed use of a flea market. Accordingly, the parties utilized the requirements for "retail store/general merchandise store" to come up with the required number of parking spaces for both customers and employees. Although the neighbors argue that the Sabatines are anywhere from thirty-nine (39) to eighty (80) spaces short because they did not include inventory area, as noted in a footnote to Table 7.1,[10] the trial court found, and we agree, that this does not affect the computations for the required number of parking spaces. Because the inventory area directly behind the vendor's space is occupied by the employee's vehicle in which the vendors typically store their inventory, the trial court found that the fact that the "employees' parked cars may also be used for inventory does not enlarge the number of cars on the tract." (Trial Court's Opinion, p. 13.)

---

9. The table provides that one (1) off-street parking space is required for each 150 square feet "[o]f all area occupied by equipment, furnishings, or inventory accessible to employees or customers, but not including corridors, toilet

rooms, and other such accessory rooms as may be provided." Table 7.1 of the Ordinance.

10. *See* Footnote 8, *infra.*

Therefore, we conclude that the trial court did not err nor abuse its discretion in determining that the Sabatines had complied with the applicable parking requirements of the Ordinance.

We conclude that the trial court properly granted the Sabatines the special exception to operate a flea market, that the conditions imposed by the trial court, with the exception of condition 11 regarding the days and hours of operation of the proposed use, are proper and reasonable, and that the trial court properly determined that the parking requirements had been met by the Sabatines. We therefore affirm the order of the trial court, with the exception of condition number 11 which is stricken.

### ORDER

AND NOW, this 13th day of December, 1994, the order of the Court of Common Pleas of Northampton County in the above-captioned matter is affirmed in all respects except with regard to condition 11, which is hereby stricken.

COLIN, J., dissents.

