**BELL ATLANTIC MOBILE SYSTEMS, INC., Appellant,**

v.

**The BOROUGH OF BALDWIN and Council of the Borough of Baldwin.**

Commonwealth Court of Pennsylvania.

Argued March 11, 1996.

Decided June 3, 1996.

William R. Sittig, Jr., for Appellant.

Thomas H. Ayoob, III, for Appellees.

Before PELLEGRINI and KELLEY, JJ., and SILVESTRI, Senior Judge.

KELLEY, Judge.

Bell Atlantic Mobile Systems, Inc. (Bell Atlantic) appeals from the order of the Court of Common Pleas of Allegheny County (trial court), dated June 16, 1995, affirming a decision of the Council of Baldwin Borough (council). The council's decision denied Bell Atlantic's application to construct a 150' cellular communications tower in the Planned Residential Development (PRD) zoning district of Baldwin Borough (borough). We affirm.

The facts of this case may be summarized as follows. The Young Men's Christian Association of Pittsburgh (YMCA) owns a six-acre tract of land in the borough's PRD zoning district. The YMCA's use of the land is legally non-conforming. On March 4, 1994, Bell Atlantic entered into a lease agreement with the YMCA to construct a 150' cellular communications tower and a 12' by 30' equipment shed on an 80' by 80' portion of the YMCA's property.

To obtain a building permit to construct the tower, Bell Atlantic had previously filed an application for site plan review with the borough on February 15, 1994. Bell Atlantic's application was reviewed by the borough's zoning officer, and was then considered by the borough's planning commission. On February 22, 1994, a public hearing was held and the planning commission recommended that the application be approved.

Bell Atlantic's application was then referred to the council. On March 21, 1994, another public hearing was held and the council voted to deny the application. On March 23, 1994, the council issued a letter denying Bell Atlantic's application for site plan review. On April 21, 1994, Bell Atlantic filed a notice of appeal of the council's decision in the trial court.

On June 16, 1995, the trial court issued an order and opinion affirming the council's decision. In its opinion, the trial court noted that under the borough's zoning ordinance, the permitted uses in the borough's PRD district are limited to various residential uses and "essential services". As defined in the ordinance, essential services allows for the construction and maintenance

of communications systems in the PRD district by "public utilities". However, the trial court determined that Bell Atlantic is not a public utility as that term is used in the ordinance. As a result, Bell Atlantic's proposed use did not conform to the permitted uses in the PRD district in which the tower was to be constructed. Therefore, the trial court affirmed the council's decision denying Bell Atlantic's application for site plan review. This appeal followed.[1]

On appeal, Bell Atlantic claims: (1) the trial court erred in determining that Bell Atlantic was not a public utility entitled to construct the communications tower as an essential service in the borough's PRD district as such a structure is a permitted use by right within this district under the borough's zoning ordinance; and (2) the trial court erred in affirming the council's decision denying Bell Atlantic's application in that the council failed to identify any legitimate reason for its denial.

We initially note that in a land use appeal where the trial court has not taken any additional evidence, this court's scope of review is limited to a determination of whether the governing body, i.e., the council, committed an error of law or abused its discretion. *Herr v. Lancaster County Planning Commission,* 155 Pa.Cmwlth. 379, 625 A.2d 164 (1993), *petition for allowance of appeal denied,* 538 Pa. 677, 649 A.2d 677 (1994). An abuse of discretion occurs when the governing body's findings of fact are not supported by substantial evidence. *Id.*

Bell Atlantic first claims that the trial court erred in determining that it is not a public utility entitled to construct the 150' cellular communications tower as an essential service as such a structure is a permitted use by right within the district under the borough's zoning ordinance.

The question of whether a proposed use falls within a given category specified in a zoning ordinance is a question of law. *Sabatine v. Zoning Hearing Board of Washington Township,* 651 A.2d 649 (Pa.Cmwlth. 1994). This issue is one of statutory construction in which it is this court's function to determine the intent of the legislative body which enacted the ordinance. *Id.* Accordingly, this court is bound by the definition of the terms in question as the ordinance itself defines them. *Id.*

Like a statute, an ordinance must be construed, if possible, to give effect to all of its provisions. *Glendon Energy Co. v. Borough of Glendon,* 656 A.2d 150 (Pa. Cmwlth.1995), petition for allowance of appeal denied, — Pa. —, 670 A.2d 644 (1995). Thus, the language of the ordinance must be construed in light of its purpose. *Id.* Moreover, it is appropriate to construe any given word or phrase with regard to the context and to bring together, if possible, the language under construction with all other parts of the ordinance. *Borough of Pleasant Hills v. Zoning Board of Adjustment of the Borough of Pleasant Hills,* 669 A.2d 428 (Pa.Cmwlth.1995). Accordingly, we must look to the relevant provisions of the borough's zoning ordinance to assess the merits of Bell Atlantic's claim.

Article IIIA of the ordinance sets forth the purpose of, and the relevant regulations applicable to, development within the borough's PRD zoning district. Specifically, section 168–19(A) provides that:

[i]t is the purpose of this Article to establish zoning regulations and controls for the use of land and structures, area of lots, bulk of buildings, amount and kind of open space land, the provision of off-street parking and other similar accessory regulations in the Planned Residential Districts. . . .

---

1. On October 5, 1995, Bell Atlantic filed, in the trial court, a petition to permit appeal *nunc pro tunc* of the court's order of June 16, 1995. The petition alleged that neither Bell Atlantic nor the borough had received notice of the court's order and opinion. That same day, the trial court issued an order granting Bell Atlantic leave to file an appeal *nunc pro tunc* due to the lack of notice of the court's order and opinion. On October 10, 1995, Bell Atlantic filed a notice of appeal to this court of the trial court's June 16 order. The trial court's grant of leave to file an appeal *nunc pro tunc* was appropriate under these circumstances. *See, e.g., Pierce v. Penman,* 357 Pa.Superior 225, 515 A.2d 948 (1986), *petition for allowance of appeal denied,* 515 Pa. 608, 529 A.2d 1082 (1987).

Section 168–19(B) provides, in pertinent part, that:

[i]n order that the purpose of this Article be furthered in an era of increasing urbanization and of growing demands for housing of all types and design, the following principles form the basis for this Article:

(1) The purpose of the procedures, standards, controls and regulations of this Article is to provide a means whereby parcels, lands and acreage identified with the planned residential development areas can be designed and developed without regard to the normal lot size, building bulk and setback requirements of the typical zoning districts. However, in this innovative type of development, minimum requirements are established to ensure that each living unit has proper light and air, appropriate access to public ways and open space and is properly connected to public utilities.

Section 168–20(A) outlines the use regulations applicable to PR–1 type development within the PRD zoning district and provides, in pertinent part:

(1) Uses by right. Land, buildings and premises in a planned residential development in the PR–1 type development shall be used for the following purposes and no other: single-family detached dwelling and essential services.

Section 168–21(A) outlines the use regulations applicable to PR–2 type development within the PRD zoning district and provides, in pertinent part:

(1) Uses by right. Land, buildings and premises in a planned residential development in the PR–2 type development shall be used for the following purposes and no other: single-family detached dwelling and essential services.

Section 168–22(A) outlines the use regulations applicable to PR–M type development within the PRD zoning district and provides, in pertinent part:

(1) Uses by right. Land, buildings and premises in a planned residential devel-opment in the PR–M type development shall be used for the following purposes and no other:

(a) Single-family detached dwellings.

(b) Garden apartments.

(c) Townhouses, high-rise apartments and essential services.

Thus, under sections 168–20, 168–21 and 168–22 of the ordinance, the permitted uses in the borough's PRD district are limited to various residential uses and essential services. Section 168–12 defines essential services as follows:

The erection, construction, alteration or maintenance, by public utilities or municipal or other governmental agencies, of underground or overhead gas, electrical, steam or water transmission or distribution systems or collection, communication, supply or disposal systems.

However, the term "public utilities" is not defined in the ordinance.

Thus, under section 169(B)(1), the ordinance specifically states that the avowed purpose of its regulations relating to development within the PRD zoning district is to ensure, *inter alia*, that each living unit within the district is properly connected to public utilities. In addition, under sections 168–20, 21 and 22, the uses by right are limited solely to the construction of single-family dwellings, townhouses, garden and high-rise apartments, and essential services. It is clear, therefore, that any construction which is permitted by right as an essential service within this district must relate to the connection of the residences within the district to public utilities. That is, not all construction by public utilities is permitted by right in this district. Rather, only that construction which is incidental to providing the residences in the district with access to public utilities is permitted by right as an essential service.

This construction of the foregoing provisions is supported by other sections of the ordinance. Under section 168–24(B)(1)(a)(51), in any C–1 general business district within the borough a use by right includes "public utilities service buildings, structures or facilities." Under section 168–

25(B)(1)(n) & (o), in any C–2 shopping center district a use by right includes both essential services for that district and "[p]ublic utilities service buildings, structures and facilities." Under section 168–27(B)(1)(a)(38) & (49), in any I–1 light industrial district a use by right includes both "public utility facilities" and "public utilities service buildings, structures and facilities." Thus, the ordinance specifically differentiates between public utilities structures used for essential services, public utility facilities and other public utilities service buildings, structures and facilities.

■ The record in the instant case demonstrates that Bell Atlantic's communications tower was to be constructed not merely to provide the residences within the district with access to a public utility, but rather to improve and expand the cellular communications services it provides to its subscribers in the public at large. It is clear that, under the borough's zoning ordinance, such a structure is not encompassed within those uses permitted by right within the PRD district as an essential service. Therefore, even if it is assumed that Bell Atlantic is a public utility, as that term is used in the borough's ordinance, its proposed construction of the communications tower is not a permitted use by right in the borough's PRD district. As a result, the council did not err in denying Bell Atlantic's application for a site plan review, and the trial court did not err in affirming council's decision.[2]

Finally, Bell Atlantic claims that the trial court erred in affirming the council's decision denying its application in that the council failed to identify any legitimate reason for its denial. In its letter notifying Bell Atlantic of the denial of Bell Atlantic's application, council indicated, *inter alia,* that the application was denied because the construction of the communications tower was not a use by right as an essential service within the PRD district. As noted above, these were proper grounds for denying Bell Atlantic's application. As a result, council identified a legitimate reason for the application's denial, and

the trial court did not err in affirming the council's decision.

Accordingly, the order of the trial court is affirmed.

### ORDER

NOW, this 3rd day of June, 1996, the order of the Court of Common Pleas of Allegheny County, dated June 16, 1995, at No. S.A. 1219–94, is affirmed.

PELLEGRINI, J., concurs in the result only.

---

2. Although the trial court affirmed the council's decision on different grounds, an appellate court may affirm the judgment of a trial court where the result is correct, even though the reason given is erroneous, where the correct basis for the decision is clear on the record. *Beck v. Zabrowski,* 168 Pa.Cmwlth. 385, 650 A.2d 1152 (1994).