**CROWN COMMUNICATIONS**

v.

**ZONING HEARING BOARD OF the BOROUGH OF GLENFIELD**

v.

**John A. STRAKA, Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 14, 1996.
Decided June 24, 1996.

---

John A. Straka, III, for Appellant.

William R. Sittig, Jr., for Appellee, Crown Communications.

Before COLINS, President Judge, FRIEDMAN, J., and SILVESTRI, Senior Judge.

FRIEDMAN, Judge.

John A. Straka (Intervenor) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) reversing the decision of the Zoning Hearing Board (ZHB) of the Borough of Glenfield (Borough) and granting Crown Communications' (Applicant) permit application for a communications tower and equipment shed.

The Borough is the owner of a vacant parcel of ground on Hill Road in one of its residential zoning districts. The property's northern boundary rests atop a cliff overlooking the Ohio River; the ground then drops precipitously to the property's southern border. Applicant is a for-profit business entity which owns and operates a series of communications towers in western Pennsylvania. For business purposes, Applicant wishes to construct a 375–foot–tall communications tower and accompanying equipment shed on the Hill Road property and has obtained a perpetual easement and right of way from the Borough to do so. Although Applicant is not regulated by the Pennsylvania Public Utility Commission (PUC) or any other regulatory body, the lessees of the proposed tower would be regulated by the Federal Communications Commission (FCC).[1] (ZHB's Finding of Fact, No. 4; R.R. at 171a.)

Applicant filed an application with the Borough for a permit to construct the tower, but was denied on the grounds that the tower was not a permitted use under the Borough's Zoning Ordinance (Ordinance). Applicant appealed the denial, and a hearing on the matter was then scheduled before the ZHB. At the hearing, Applicant argued that the tower is, in fact, a permitted use under section 29(c) of the Ordinance,[2] as read in conjunction with the "savings clause" found in section 10 of the Ordinance.[3] In the alternative, Applicant challenged the validity of the Ordinance, asserting that, unless section 29(c) is interpreted to permit the tower, the Ordinance improperly excludes all privately-owned communications facilities from the Borough. The ZHB denied Applicant's appeal on the basis that Applicant had not

---

1. The tower would be devoted to a number of public service uses such as police, fire and emergency medical transmission, as well as to enhancing domestic cellular telephone services.

2. Section 29(c) of the Ordinance (emphasis added) provides:

    In appropriate cases the Zoning Hearing Board on appeal, may issue a permit:
    . . .
    (c) For the erection and use of a *building* to a reasonable height *or the use of land* in a suitable location *by a public service corporation for public utility purposes* which the Board determines reasonable [sic] necessary for the public convenience or welfare.

3. Section 10 of the Ordinance (emphasis added) provides:

    Section 10. *Uses Not Provided For.* Whenever in any district established under this Ordinance, a use is neither specifically permitted or denied and an application is made by a property owner to the Zoning Inspector and Planning Commission for such use, the Zoning Inspector and Planning Commission shall refer the application to the Planning Commission to permit the use or deny the use. *The use may be permitted if it is similar to and compatible with permitted uses in the district and in no way is in conflict with the general purpose and intent of this Ordinance.*

satisfied the requirements of section 29(c) of the Ordinance in that the proposed tower was a "structure" rather than a "building." Moreover, the ZHB also concluded that because Applicant is not regulated by the PUC, Applicant is not a public service corporation as required by section 29(c) of the Ordinance. (ZHB's Conclusions of Law, Nos. 1 and 2; R.R. at 173a.) The ZHB also determined that the Ordinance is not exclusionary. (ZHB's Conclusion of Law, No. 5.)

On appeal, the trial court reversed the ZHB's denial. Although the trial court agreed with the ZHB that the proposed tower was a "structure," not a "building,"[4] it concluded that this was not fatal to the application. The trial court reasoned that, because section 29(c) is framed in the disjunctive, a "structure," as opposed to a "building," is permitted so long as Applicant's proposal is for "the use of land in a suitable location by a public service corporation." (Trial ct. op. at 4.) The trial court concluded that the proposed tower was a use of land in a suitable location. Addressing the issue of whether Applicant is a public service corporation, the trial court acknowledged that Applicant is not a public service corporation, but relied upon the "savings clause" of section 10 of the Ordinance to conclude that, because *Applicant's lessees* would be public service corporations, *Applicant's* use of the tower is sufficiently similar to and compatible with a "land use for public utility purposes" to qualify as a permitted use under section 29(c) of the Ordinance. The trial court, thus, reversed the ZHB's denial of Applicant's permit application.[5]

Intervenor now appeals to this court,[6] arguing that the trial court erred by treating Applicant as a "public service corporation"

for the purposes of section 29(c) of the Ordinance. Intervenor points out that Applicant is a for-profit business that merely rents space on its communications towers to genuine public service corporations, and that, unlike its lessees, Applicant is not regulated by *any* government agency. In support of its position, Intervenor relies upon *Public Utility Commission v. WVCH Communications, Inc.*, 23 Pa.Cmwlth. 292, 351 A.2d 328 (1976). In *WVCH*, we concluded that the term "public utility corporation" encompasses all public utility corporations, not just those regulated by the PUC; however, we declined to hold that WVCH, a commercial radio station, fit within the definition of a public utility even though WVCH was regulated by the FCC and served a public interest. In consideration of WVCH's argument that it was a public utility, we stated that:

> [i]n order to qualify as a public utility corporation[,] WVCH would have to prove that it is required by law to (1) serve all members of the public upon reasonable request; (2) charge just and reasonable rates subject to review by a regulatory body; (3) file tariffs specifying all of its charges; and (4) modify or discontinue its service only with the approval of the regulatory agency.

*Id.* 351 A.2d at 330. Because WVCH had produced no evidence to prove it met any of these criteria, we concluded that WVCH was not a public utility and was, therefore, properly denied permission to construct the communications tower at issue.

Intervenor also cites *Hawk v. Zoning Hearing Board of Butler Township*, 152 Pa. Cmwlth. 48, 618 A.2d 1087 (1992), *rehearing denied*, 1993 Pa.Cmwlth. LEXIS 31 (1993), *appeal denied*, 535 Pa. 625, 629 A.2d 1385

---

4. Section 3 of the Ordinance defines a "structure" as "anything constructed or erected, the use of which demands a permanent location on the soil; or attached to something having a permanent location on the soil." The Ordinance does not define "building," however. *See also, Walker v. Ehlinger,* —— Pa. ——, 676 A.2d 213 (1996).

5. Due to its resolution of Applicant's first issue, the trial court did not reach Applicant's argument on the issue of exclusionary zoning.

6. It appears from the record that the trial court made its decision without an evidentiary hearing and after hearing argument from counsel. In an appeal from a decision of a zoning hearing board where, as here, the trial court accepted no new evidence, our scope of review is limited to determining whether the zoning hearing board committed a manifest abuse of discretion or an error of law in its findings. Section 754 of the Local Agency Law, 2 Pa.C.S. § 754; *D'Amato v. Zoning Board of Adjustment of City of Philadelphia,* 137 Pa.Cmwlth. 157, 585 A.2d 580 (1991).

(1993), in which we concluded that the applicant, a mobile telecommunications provider, could be considered a public utility, and thus, could construct a communications tower. However, Intervenor points out that, in *Hawk,* unlike *WVCH* and the situation in the present case, the local ordinance defined "public utility" in such a way as to include private businesses such as the applicant.[7] Intervenor urges us to follow *WVCH* and *Hawk* and conclude that, because Applicant is not regulated by *any* governmental agency, and so fails to satisfy the requirements of *WVCH,* and because, unlike the local ordinance in *Hawk,* the Ordinance here does not define "public service corporation" or "public utility" to include Applicant, the trial court erred by treating Applicant as a public service corporation.

■ Although Applicant admits that it is not a "public utility" for conventional purposes, Applicant asserts that it is sufficiently similar to a public utility to be considered one for these purposes. We disagree. Applicant, as a purely private unregulated enterprise not legally bound to serve the public at reasonable rates, bears little resemblance to a public utility under the criteria established in *WVCH.* Furthermore, in contrast to *Hawk,* there is no provision within the Ordinance under which Applicant could be considered a public utility. Thus, Applicant is *not* a public utility as required by section 29(c) of the Ordinance. *See also Bell Atlantic Mobile Systems, Inc. v. Borough of Baldwin,* 677 A.2d 363 (Pa.Cmwlth.1996) (implicitly affirming trial court's holding that a person or corporation, not otherwise a public utility, who or which furnishes mobile domestic cellular services is not a public utility).

■ Applicant asserts, however, that if section 29(c) of the Ordinance is read in conjunction with the "savings clause" of sec-

tion 10, Applicant's proposed use of the property should be permitted because it is similar to, and compatible with, permitted use of the property by an actual public utility corporation. Again, we disagree. Although section 10 of the Ordinance authorizes *uses* similar to, and compatible with, permitted *uses,* it does not waver from the requirement set forth in section 29(c) of the Ordinance that these uses must be by an actual "public service corporation for public utility purposes." Because we have already determined that Applicant is not a public service corporation for the purposes of section 29(c) of the Ordinance, we reverse the trial court's conclusion that, under sections 10 and 29 of the Ordinance, Applicant is permitted to construct a communications tower upon the property.[8]

■ Finally, Applicant asserts that the ordinance is exclusionary, and thus invalid, if it is read to prohibit private businesses from constructing and operating communications towers within the Borough. However, we conclude that Applicant has waived this issue. Under section 908 of the Pennsylvania Municipalities Planning Code (MPC),[9] public notice must be given prior to zoning board hearings. When a challenge to the validity of an ordinance is to be part of the hearing, section 916.1(e) of the MPC, 53 P.S. § 10916.1(e), requires that the public notice "include notice that the validity of the ordinance ... is in question and shall give the place where and the times when a copy of the request ... may be examined by the public."

Careful review of the record reveals no evidence that Applicant ever submitted, pursuant to section 916.1(a) of the MPC, 53 P.S. § 10916.1(a), such a validity challenge to the ZHB prior to raising the issue at the public hearing. Indeed, the record establishes that the public notice given prior to the ZHB's September 20, 1994 hearing contained only

---

7. Section 3.48 of the Butler Township Zoning Ordinance defines "public utility," in relevant part, as a "... private business organization performing some public service and subject to special governmental regulations...." *Hawk* 618 A.2d at 1090.

8. Intervenor also argued that the trial court erred by: 1) holding that the proposed 375 foot tower is an appropriate use of land in a suitable location; and 2) holding that the proposed tower "in no way is in conflict with the general purpose and intent" of section 13 of the Ordinance, which prohibits structures exceeding 45 feet from the entire Borough. However, due to our disposition of Intervenor's first issue, we need not address the other issues raised.

9. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10908.

notice of a variance request;[10] the notice did not mention a challenge to the Ordinance's validity. Applicant asserts that, because it raised the validity challenge only as an alternative argument, its challenge did not need to be included in the public notice. We disagree. Section 916.1 of the MPC does not apply only when the validity challenge is the main argument; rather, if an applicant wishes to raise a validity challenge at any time during a ZHB proceeding, even if only as an alternative theory, it must make this intent known prior to the meeting in a public notice in accordance with the requirements of section 916.1 of the MPC.[11]

Accordingly, we reverse.

### ORDER

AND NOW, this 24th day of June, 1996, the order of the Court of Common Pleas of Allegheny County, dated December 21, 1995, is reversed.

---

10. The public notice stated:
    PUBLIC MEETING Glenfield Zoning Hearing Board Tuesday September 20, 1994; 7:30 P.M. Glenfield Volunteer Fire Hall
    To hear the variance request of Crown Communications for installation of a communications facility and tower on property located on Hill Road.
    (R.R. at 183a.)

11. Applicant also asserted that the Ordinance was invalid in light of section 704(a) of the recently enacted Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7)(B)(i)(1). Due to our conclusion that Applicant's validity challenge was waived, we do not reach this issue; nevertheless, were we to address section 704(a) of the Telecommunications Act of 1996, our disposition would remain unchanged.