**COAL GAS RECOVERY, L.P., and Emerald Coal Resources, L.P., Appellants**

v.

**FRANKLIN TOWNSHIP ZONING HEARING BOARD, GREENE COUNTY, Pennsylvania.**

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 2008.

Decided March 20, 2008.

---

Clifford B. Levine, Pittsburgh, for appellants.

Kirk A. King, Waynesburg, for appellee.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Coal Gas Recovery and Emerald Coal Resources appeal an order of the Court of Common Pleas of Greene County (trial court) affirming the grant of a special exception by the Franklin Township Zoning Hearing Board (Board), which included a condition that was challenged by appellants. In this case we consider, *inter alia*, whether the Board had grounds to order the construction of a building around a gas compressor as a condition to the grant of a special exception to install the compressor. Concluding that the evidence did not support the imposition of this condition, we reverse.

Emerald, a coal mine operator, owns an 85 acre tract of land situated in an A–1 Rural Agricultural zoning district in Greene County. The land is vacant except for a log cabin that is currently uninhabited. Located on the property is a "gob pipe vent," *i.e.*, an opening which allows methane gas to vent from Emerald's mine into the atmosphere. However, Coal Gas Recovery would like to capture the gas and sell it for a profit. This involves placing a gas compressor over the vent opening.

The parties agree that this type of endeavor qualifies as an "extractive industry" under the Franklin Township Zoning Ordinance (Zoning Ordinance)[1] and is allowed by special exception in the A–1 district. Coal Gas Recovery filed an application for a special exception to install and run a gas compressor on Emerald's property. Reproduced Record at 5a–10a (R.R. ———). The Franklin Township Planning Commission recommended to the Board that the special exception be granted.[2]

---

1. "Extractive industry" is defined in Section 202 of the Zoning Ordinance as "any mining, quarrying, or processing of coal, limestone, clay, sand, gravel, or other mineral resources for sale or otherwise used for commercial purposes; including drilling and other activity related to the extractive process." Reproduced Record at 172a.

2. Section 601 of the Zoning Ordinance generally describes the criteria for a special exception as follows:

 Special Exceptions ... shall be permitted only upon authorization by the Zoning Hearing Board subsequent to review by the Planning Commission, provided that such uses shall be found by the Zoning Hearing Board to comply with the following requirements and other applicable requirements as set forth in this Ordinance.

 A. That the use is a permitted special exception as set forth in Schedule I hereof.
 B. That the use is so designed, located and proposed to be operated that the public health, safety, welfare and convenience will be protected.
 C. That the use will be compatible with adjoining development and the proposed character of the Zone District where it is to be located.
 D. That adequate landscaping and screening is provided as required herein.
 E. That adequate off-street parking and loading is provided and ingress and egress is so designed as to cause minimum interference with traffic on abutting streets.
 F. That the use conforms with all applicable regulations governing the district where located, except as may otherwise be determined for large-scale planned developments.
 G. That the use will have a minimal effect on Township facilities.
 R.R. 209a.

A hearing on the special exception was held by the Board on January 23, 2007. Mark Leidecker, of Jesmar Energy, which installs equipment for methane extraction, testified. He explained that the project proposed by Coal Gas Recovery involves the installation of a 95 horsepower compressor, which is smaller than an automobile engine, at the vent site. The compressor is attached to a pipeline leading to individual bore holes drilled into the coal mine and is also attached to a gas gathering line that leads to a gas treating plant. There, the gas is treated and sold into the Equitrans pipeline.

Franklin Township gave Coal Gas Recovery permission to install the compressor so that it could be tested for compliance with the noise level provisions of the Zoning Ordinance.[3] The Township Supervisor, the Zoning Officer and Leidecker were all present at the compressor site when the noise level readings were taken. The first reading was taken beside the compressor when it was not running. The second reading was taken beside the compressor running at its maximum speed of 1,700 rpm, and it measured 55 to 60 decibels. The third reading was taken at a point on the Emerald property closest to a neighbor's house; with the compressor running at maximum speed, the noise measured approximately 35 decibels. Leidecker testified that all the readings were within acceptable noise levels under the Zoning Ordinance, and that the noise from the compressor at the point closest to the neighbor's home was "above a whisper" and could barely be heard. R.R. 22a. Since these tests, the compressor has not

been turned on; once approved, the compressor will run continuously.

Steven Coss, the Franklin Township Zoning Codes Enforcement Officer, confirmed that he was present when the noise readings were taken. He explained that the decibel readings taken close to the neighboring residence were 20 to 25 decibels below the maximum noise level allowed by the Ordinance.

Some neighboring residents spoke at the hearing. They understood that the compressor was an allowed use, but they had concerns they wanted addressed. None of the neighbors stated that they heard the compressor being tested or that they know what it will sound like. However, Alan Bianchi, the neighbor living in the house nearest the compressor, expressed concern over the possible noise.[4] He requested that the compressor be enclosed inside a building.

The Pattons, a husband and wife who live in the vicinity, explained that they once lived on Emerald's property; are in the process of buying the land back; and could possibly move into the log cabin on the property. Mrs. Patton asked what the compressor would sound like and expressed dissatisfaction with the locations where the noise level readings were taken. She was also concerned that if they move back onto the land, their children and cattle could get too close to the compressor. Mr. Patton expressed concern that the noise testing was only done on one particular day and that, in his opinion, the compressor is unattractive. The Pattons asked that the compressor be enclosed within a building.[5]

---

3. Section 604(D)(2) of the Zoning Ordinance provides the noise limits for special exceptions and tables for determining permissible decibel levels. R.R. 217a.

4. His house is located approximately 600 yards from where the compressor is located.

5. Leidecker explained that the compressor will have a muffler to suppress the sound, and will have a fence around the site to keep out the children and cattle. However, the neighbors insisted on a building. They mentioned the fact that Coal Gas Recovery was going to

Following the hearing, the Board issued a decision approving the special exception request

with a condition that a suitable building for safety, aesthetics and noise conditions meeting the applicable codes be installed around the compressor.

Board Decision at 2; R.R. 34a. Coal Gas Recovery and Emerald appealed and filed a petition to stay the requirement of constructing a building. A hearing on the petition for a stay was held before the trial court on March 28, 2007.

Coal Gas Recovery presented testimony from Joanne Riley, a certified professional geologist who is the senior engineer in charge of the coal bed methane project. Riley explained that methane is a highly explosive gas that must be vented from the coal mine. Methane is a greenhouse gas which can be harmful to the environment; therefore, technology has been developed to gather the methane, compress it, process it and place it into a natural gas pipeline instead of allowing it to escape into the atmosphere.

Riley testified about the decibel readings that were taken. The first noise readings taken at the compressor site with the compressor not running were in the 29 to 30 decibel range, which is a normal background noise level for a rural area. The second readings taken beside the compressor with the compressor running at a high rate of speed were in the 60 decibel range, the maximum noise the compressor would generate. The third readings that were taken at the edge of the Emerald property closest to the Bianchi home were in the range of 30 decibels. All noise levels satisfied Franklin Township standards. Riley measured the distance from the compressor to the nearest homes; the nearest home is 1,755 feet away, the next home is 2,007 feet away and the next home is 2,517 feet away.[6]

Not every methane ventilation site is suitable for a compressor, as is this one. The Emerald site is projected to make $300 a day. Riley confirmed that the compressor has not been started since the noise testing was conducted, because the building has not yet been constructed. The building, if required, will cost $21,200 and will be steel-sided with doors on each end. Riley testified that the "compressor is already equipped with a hospital grade muffler, so that cuts down significantly on the noise." R.R. 65a.

Riley testified that the Pennsylvania Department of Environmental Protection (DEP) oversees the methane gas extraction project. DEP gave plan approval to run all compressors involved in the project, which includes the compressor at issue here. DEP also issued a letter authorizing continued operation.

Coal Gas Recovery offered DEP's plan approval to install and run compressors into evidence. DEP's approval is subject to several conditions, one of which requires the compressor to be enclosed by a chain link fence and equipped with a muffler or other noise reduction device. DEP's letter authorizing continued operation was also submitted into evidence.

Coal Gas Recovery and Emerald also presented testimony from Zoning Officer Steven Coss, who reiterated that he was present when the decibel readings were taken in this case and that all decibel

---

place a building around a compressor on a different site, and they wanted one as well.

**6.** Riley explained that Coal Gas Recovery has compressors on different gob ventilation sites. She acknowledged that Coal Gas Recovery voluntarily made provisions to place buildings over compressors on two of the sites because there were homes located within very close proximity.

levels were within the limits set by the Zoning Ordinance. The Ordinance requires that the noise from the compressor must be 55 decibels or less from "points of measurement." R.R. 81a. Coss explained that it was within his discretion to decide where to measure the decibel readings, and he chose to do the reading close to the nearest house. The decibel range near the neighbor's house was well below what is allowed.

At the close of testimony, the trial court granted the petition for a stay of the requirement of constructing a building. The parties discussed whether another hearing would be needed for the merits of the appeal, and it was agreed that another hearing was not necessary because the evidence would be the same as was already presented. The trial court asked, "did we just have the appeal hearing also?" R.R. 90a. The parties agreed that the hearing on the petition for a stay was also the appeal hearing.

The trial court denied the appeal. In its opinion, the trial court noted that there is no evidence that Coal Gas Recovery's proposed use violates any requirement in the Zoning Ordinance. As such, the trial court felt that the objectors had the burden to show that the proposed special exception would impact adversely on the public interest without the special condition. The trial court determined that the record supports the Board's condition in two ways: (1) the objectors' concerns about noise levels were based on more than mere possibilities of harm because the compressor was in place and running at the time of the hearing and the objectors had "actual experience listening to the compressor," and (2) "a building would make for a safer installation than would a mere fence." Trial Court Opinion

at 4–5. The trial court further determined that the Board's ability to impose a condition was not preempted by the Oil and Gas Act,[7] the Air Pollution Control Act,[8] or regulations implementing those acts. The present appeal followed.

On appeal, Coal Gas Recovery and Emerald raise three main issues. First, they argue that the trial court applied the incorrect standard of review. It took additional evidence at hearing but then exercised appellate rather than *de novo* review. Second, they argue that the trial court abused its discretion and erred as a matter of law because the uncontroverted evidence demonstrates that the use complies with the express standards and criteria for a special exception without the condition, and there is no basis in the record for imposing a building condition. Third, they contend that the Board's authority to impose conditions on special exception approval is preempted by the Oil and Gas Act, the Air Pollution Control Act, and the corresponding DEP regulations, permits and approvals.

We first address the standard of review issue. Coal Gas Recovery and Emerald contend that the trial court erred in exercising purely appellate jurisdiction because of the evidence adduced at the trial court's hearing on the stay, which also pertained to the merits of the Board's decision. Accordingly, they argue that the trial court should have made its own findings of fact. Nevertheless, they also assert that this Court may review the trial court's decision without a remand.

 The standard of review to be applied by this Court in zoning cases depends on whether or not the trial court took new evidence. Where the trial court does not take additional evidence, we are

---

7. Act of December 19, 1984, P.L. 1140, *as amended*, 58 P.S. §§ 601.101–601.605.

8. Act of January 8, 1960, P.L. (1959) 2119, *as amended*, 35 P.S. §§ 4001–4106.

limited to determining whether the zoning hearing board committed an error of law or manifestly abused its discretion. *Greth Development Group, Inc. v. Zoning Hearing Board of Lower Heidelberg Township,* 918 A.2d 181, 185 n. 4 (Pa.Cmwlth.2007).[9] Where the trial court takes additional evidence on the merits, it must review the case *de novo;* this Court then reviews the trial court's findings of fact and legal conclusions for an error of law or abuse of discretion. *LHT Associates, LLC v. Township of Hampton,* 809 A.2d 1072, 1075 n. 1 (Pa.Cmwlth.2002).

Here, the trial court acknowledged in its opinion that it heard testimony, but stated that "the issue was limited to the request for a stay." Trial Court Opinion at 3, n. 2. The trial court then proceeded to conduct appellate review of the Board's decision. Based on the submission of evidence to the trial court and the agreement of all parties and the trial court that the hearing on the petition for a stay was also a hearing on the merits of the appeal, we agree with Coal Gas Recovery and Emerald that the trial court erred in failing to conduct *de novo* review.

■ This Court has explained the procedure to be followed where the trial court applies the incorrect standard of review. In *Borough of Jenkintown v. Board of Commissioners of Abington Township,* 858 A.2d 136 (Pa.Cmwlth.2004), we stated:

Generally, if the trial court, after taking additional evidence on the merits, has failed to make its own review *de novo,* we must remand to the trial court. However, even in cases where a trial court has accepted additional evidence on the merits, and nevertheless improperly proceeds to exercise pure appellate

review rather than *de novo* review, we may review the trial court's decision when the record presents "uncontradicted facts" permitting our review and rendering a remand unnecessary.

*Id.* at 139.

Here, the essential facts in this case are not in dispute. The testimony presented before the trial court was very similar to the testimony heard by the Board. Further, the trial court did make its own findings about the reasonableness of requiring a building around the compressor, although it did not expressly label them as "findings of fact." In this way, then, the trial court performed at least a partial *de novo* review. Accordingly, we are capable of reviewing the trial court's decision as it is without the need for a remand.

■ We turn, then, to the argument of Coal Gas Recovery and Emerald that the trial court erred, or abused its discretion, in imposing a condition to the grant of the special exception. Specifically, they contend that the building condition does not bear a reasonable relationship to the health, safety and general welfare of the public, and the condition is based on nothing more than the unsubstantiated opinions of some neighbors. The Board counters that the evidence supports the imposition of a building condition because the adjacent residents testified to the "possibility of increased noise from the compressor" and have actual experience with the noise emissions from this type of gas compressor. Board's Brief at 3.

■■ A special exception is a use that is expressly permitted by a zoning ordinance. *Broussard v. Zoning Board of Adjustment of the City of Pittsburgh,* 831

---

**9.** An abuse of discretion occurs when the findings are not supported by substantial evidence in the record. *Mehring v. Zoning Hearing Board of Manchester Township,* 762 A.2d 1137, 1139 n. 1 (Pa.Cmwlth.2000). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

A.2d 764, 769 (Pa.Cmwlth.2003). Once an applicant for a special exception proves that its proposed use meets the criteria found in the zoning ordinance, "it is presumed that the local legislature has already considered that such use satisfies local concerns for the general health, safety and welfare and that such use comports with the intent of the zoning ordinance." *Id.* at 772.

Nevertheless, Section 912.1 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* added by Act of December 21, 1988, P.L. 1329, 53 P.S. § 10912.1, provides, in relevant part, that a zoning hearing board, while granting a special exception,

> may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act and the zoning ordinance.

However, the ability to impose a condition on a special exception is not unfettered. Conditions must be reasonable and must find support in the record warranting the imposition of such conditions; otherwise, the imposition of conditions constitutes an abuse of discretion. *Sabatine v. Zoning Hearing Board of Washington Township,* 651 A.2d 649, 655 (Pa.Cmwlth.1994). "[T]he Board is not required to support the imposition of conditions; rather, the opposite is true—property owners are required to show that the imposition of conditions was an abuse of discretion." *Leckey v. Lower Southampton Township Zoning Hearing Board,* 864 A.2d 593, 596 (Pa.Cmwlth.2004).[10]

We agree with Coal Gas Recovery and Emerald that the Board and trial court erred in requiring the compressor to be installed within a building. It was undisputed that Coal Gas Recovery met all requirements under the Zoning Ordinance for the grant of a special exception to install and operate the compressor. The MPC allows the imposition of reasonable conditions where necessary to implement the purpose of the Zoning Ordinance, which, at Section 601(B), requires that a special exception use be conducted in a way that protects the "public health, safety, welfare and convenience." R.R. 209a. Here, however, a condition was not needed to implement the purpose of Section 601(B) of the Zoning Ordinance.

The only concrete evidence concerning noise conditions was presented by Coal Gas Recovery and Emerald, and it established that the noise generated by the compressor is far below what is permissible under the Zoning Ordinance. The rest of the evidence regarding noise consisted of speculative testimony from neighbors who had never actually heard the compressor in operation.[11] The trial court stated in its opinion that the compressor has been running ever since it was installed and that

---

10. In *Leckey,* this Court described the standard of review of conditions attached to the grant of a special exception as follows:

> ... a court reviews a challenge to the reasonableness of those conditions; it does not determine whether there is substantial evidence, which is a "fact standard," but whether those conditions constitute an abuse of discretion.

*Id.* at 596. As explained in several other cases, the imposition of a condition when there is no evidence in the record to support

the condition is manifestly unreasonable and an abuse of discretion. *See Berger v. Zoning Hearing Board of the Borough of Mifflinburg,* 85 Pa.Cmwlth. 480, 482 A.2d 1184 (1984); *Abernathy v. Zoning Hearing Board of Hampton Township,* 119 Pa.Cmwlth. 193, 546 A.2d 1311 (1988); *Sabatine, supra.*

11. Indeed, Mr. Bianchi stated that "I would like to hear this when it is running" in order to "[s]ee what kind of racket it is going to make." R.R. 19a.

the neighbors had experience listening to it. These statements of the trial court are simply incorrect and unsupported by any evidence whatsoever. The uncontradicted evidence is that the compressor was only run on one occasion in order to take decibel readings and has not been started since. This compressor is not located in a densely populated area but, rather, in a rural agricultural area with the nearest neighbor 1,755 feet away, or nearly the length of six football fields.

Turning to safety issues, the only thing adduced was Mrs. Patton's highly speculative testimony that her family might be moving back onto the land and that her children and cattle could get near the compressor. These things may never happen. Even if they do occur, there is no evidence that the compressor poses any type of safety hazard. Coal Gas Recovery and Emerald presented evidence that under DEP requirements, they must place a fence around the compressor and they intend to do so. There is absolutely no evidence that providing a fence is not adequate or that an enclosure building would make things safer. Finally, the only testimony concerning aesthetics was Mr. Patton's opinion that the compressor does not look nice. There is no indication that the compressor is any more of an eyesore than any other manmade structure or that it is readily visible to the public at large.

In imposing a building condition in this case, the Board was merely trying to appease neighboring residents who insisted on such a condition despite the fact that they knew little or nothing about the compressor. In short, Coal Gas Recovery and Emerald have proven that it was an abuse of discretion and manifestly unreasonable to impose the requirement of placing a building around the compressor. There-

fore, the trial court's order denying the appeal of the imposition of a building condition on the grant of the special exception is reversed.[12]

### ORDER

AND NOW, this 20th day of March, 2008, the order of the Court of Common Pleas of Greene County in the above-captioned case, dated June 1, 2007, denying the appeal of the imposition of a special condition is hereby REVERSED.

---

**12.** Because of our disposition of the case, it is unnecessary to address Coal Gas Recovery and Emerald's third issue regarding preemption.