Phyllis RULEY, Appellant

v.

WEST NANTMEAL TOWNSHIP ZONING HEARING BOARD and West Nantmeal Township Board of Supervisors.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 10, 2008.
Decided May 13, 2008.

John G. Richards, II, Conshohocken, for appellant.

Kristin S. Camp, West Chester, for appellee, West Nantmeal Township.

BEFORE: LEADBETTER, President Judge, LEAVITT, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Phyllis Ruley appeals an order of the Court of Common Pleas of Chester County (trial court) dismissing her appeal of a decision of the West Nantmeal Township Zoning Hearing Board (Board) that she was operating a kennel without the requisite special exception approval. The trial court held that Ruley's animal shelter was a kennel within the meaning of the West Nantmeal Township Zoning Ordinance [1] (Zoning Ordinance), which defines a kennel as an establishment boarding dogs for compensation. The trial court held that the donations made to the shelter constituted "compensation." Ruley also appeals an order of the trial court requiring Ruley to pay a fine, costs and attorney fees to West Nantmeal Township. The principal issue we consider in this appeal is whether

1. West Nantmeal Township Zoning Ordinance of 1990.

the trial court erred in its construction of the Zoning Ordinance.

The facts of this case are essentially undisputed. Ruley owns a 1.8 acre tract of land located in an R–3 Residential Zoning District. The property contains Ruley's single-family dwelling, a barn and a swimming pool. On the property, Ruley maintains an animal rescue operation called "Help the Animals." Although it functions predominantly as a cat rescue, dogs are occasionally taken in if there is enough space. All of the cats are kept in the house. Some of the cats are crated if they have medical issues or problems socializing with the other cats, while the others are free to roam through the house. The rescue dogs are kept in the barn.

In July 2005, the Township received complaints about offensive odors emanating from Ruley's property and about her handling of waste. The Township's Assistant Zoning Officer and a representative from the Society for the Prevention of Cruelty to Animals (SPCA) went to the property on July 29, 2005, to investigate the complaints and the conditions in which the animals were maintained.

On October 11, 2005, Zoning Officer J. Russell Yerkes also inspected Ruley's property. A few days later, Yerkes issued a Zoning Enforcement Notice to Ruley that cited numerous violations of the Zoning Ordinance. Reproduced Record at 176a–177a (R.R. ——). The cited violations were: Section 601 of the Zoning Ordinance, operation of a kennel on the property without first obtaining special ex-

ception approval; Section 1315.G(1), emission of offensive odors at numerous points beyond the property lines; Section 1402.A, storage of man-made materials such as a refrigerator, van, animal kennels and miscellaneous items outside for more than thirty days without screening them from public view; Section 1402.B, storage of items such as animal kennels, a chain link fence, a van and miscellaneous debris in the front yard; and Section 1402.C, failure to keep all organic rubbish and garbage contained in tight, verminproof containers.

All of the violations were eventually resolved by the parties save one: the violation of Section 601 of the Zoning Ordinance.[2] Section 601 permits the operation of a "kennel" by special exception, and a "kennel" is defined as

[a]n establishment under the Pennsylvania Dog Law [3 P.S. § 459–101—459–1205] operated for the purpose of trading, breeding, boarding, training, or grooming customary household pets for compensation.

Zoning Ordinance, June 2003, Art. 11, § 201. Because Ruley never obtained a special exception to operate Help the Animals, she was ordered to cease and desist her operations.

Ruley appealed, and the Board conducted a hearing on the cease and desist order. Jerry Godfry, D.V.M., a veterinarian who provides veterinary services at no charge for Help the Animals, testified. He described Help the Animals as a no-kill animal rescue that seeks to find homes for

2. Specifically, Section 601 reads in relevant part:

B. Uses by special exception. Within the R–3 Residential District the following uses may be permitted by the Zoning Hearing Board as a special exception in accordance with Section 912.1 of the Pennsylvania Municipalities Planning Code. Special exception uses shall be compatible with the sur-

rounding neighborhood and shall not be detrimental to public health, safety, or welfare.

(1) Educational or religious use or structure.
(2) Hospital or sanitorium.
(3) Kennel.
(4) Public utility operating facility.

Zoning Ordinance, June 2003, Art. VI, § 601.

animals, which are predominantly cats but can include some dogs or even reptiles or birds. Dr. Godfry explained that other veterinary hospitals as well as individuals refer unwanted and homeless animals to Help the Animals "because they know that we are helping these animals. We just don't kill them if we don't find a home for them." Notes of Testimony, Board Hearing, February 7, 2006, at 85 (N.T. ——). By contrast, he explained that the SPCA will euthanize animals that fail to get adopted.

Dr. Godfry explained that Help the Animals takes in the animals at Frazer Animal Hospital, where he practices and Ruley also works. Dr. Godfry tests all animals to make sure they are healthy and provides medical care if needed. With regard to cats, Dr. Godfry administers a feline leukemia/AIDS test to every cat and also tests for internal and external parasites using a test kit that costs $9 to $10. He also spays or neuters the animals at no cost. When animals are deemed healthy and adoptable, they are transferred to Ms. Ruley's home to await adoption.[3]

Dr. Godfry explained that Ruley is a veterinary technician at Frazer Animal Hospital and is the sole officer of Help the Animals, which is a nonprofit organization. It does not solicit donations, but it does receive them from both businesses and individuals. Most of the donations are spent on medical supplies, feline leukemia tests and surgical procedures performed by a veterinarian other than Dr. Godfry; however, the donations do not begin to cover the costs. When there is not enough money to cover the test kits, Dr. Godfry purchases them with his own funds.

Ruley testified on her own behalf. She confirmed that Help the Animals is a no-kill rescue shelter primarily for cats, but it can also shelter up to eight dogs. The number of animals fluctuates depending on the speed of adoptions. At the time of the hearing, Ruley had two dogs and approximately seventy cats waiting for adoption.[4] Ruley stated that every effort is made to find homes for the animals, but if one is not found, the animals can stay at her house permanently. When there are seventy cats at her home, Ruley has thirty to thirty-five litter boxes and goes through forty pounds of cat food each day. Ruley pays the cost of food and litter and stated that, "I use all my money to take care of the animals." N.T. 120.

Ruley testified that she never requests money from the persons who adopt animals, but she will accept donations for Help the Animals. She estimated that ninety percent of the donations are used for medical expenses, and the remaining ten percent is used for education; helping other people purchase services for their animals that they cannot afford; and purchasing food and litter for Help for Animals. All of the donations are used for the animals. Ruley explained as follows:

> I think that the animals come first ... the main aspect of Help the Animals is to help the animals. It is not for me to make a profit, it is not for me to get a pay check, it is not for me to feed myself, it is not for me to pay for any electrical or whatever. I don't take any

---

**3.** Dr. Godfry explained that "the animals would come in through my door and basically exit from my door ... they are only in [Ruley's] possession for that short period of time in between." N.T. 91.

**4.** Ruley also had three goats, one of which lives in the house, and some other dogs, which are her personal pets.

money from those animals. Everything goes to them. N.T. 122–123.[5]

The Board sustained the cease and desist order in the Zoning Enforcement Notice. The Board found that Ruley's receipt of donations constituted "compensation" thereby bringing her operation within the definition of a "kennel," which is an "establishment . . . boarding 'customary household pets for compensation.' " Board Decision, February 23, 2006, at 6; Findings of Fact 14–16.[6] The Board determined that Ruley had been continuously operating a kennel since at least July 29, 2005, without a special exception in violation of Section 601 of the Zoning Ordinance.[7] In a companion decision, the Board denied Ruley's request for a special exception in the event she was found to be operating a kennel. Ruley appealed both Board decisions.

In April 2006, the Township filed a complaint seeking civil penalties from Ruley under Section 617.2 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10617.2, which allows a municipality to recover fines, costs and attorney fees for prosecuting a violation of a zoning ordinance.[8] On June 13, 2006, District Justice Michael Cabry entered judgment in favor of the Township and assessed Ruley $8,000 in fines, $73.45 in costs, and $12,229.80 in attorney fees, for a total judgment of $20,303.25.[9] Ruley appealed. In response, the Township filed another complaint requesting that the trial court impose a fine of up to $500 per day for every day that Ruley operated her kennel after receipt of the Zoning Enforcement Notice, as well as costs, attorney fees, and an order restraining further operation of a kennel. In the meantime, the Township also intervened in Ruley's appeal of the Board decisions. Ruley's appeals were consolidated with the Township's complaint and heard as one case before the trial court.

The trial court denied Ruley's Board appeals. First, the trial court noted that Ruley abandoned her appeal of the denial of a special exception because her counsel acknowledged that her lot was too small to meet the requirements for a special exception. Next, the trial court addressed her

---

5. The Zoning Officer and the Assistant Zoning Officer also testified at the hearing.

6. The terms "boarding" and "compensation" are not defined in the Zoning Ordinance.

7. The Board also determined that Ruley was guilty of the other cited violations of Sections 1315.G(1), 1402.A, 1402.B and 1402.C of the Zoning Ordinance. However, all those violations were subsequently resolved by Ruley's corrective measures.

8. Section 617.2 of the MPC was added by the Act of December 21, 1988, P.L. 1329, and provides for the following enforcement remedies:

(a) Any person, partnership or corporation who or which has violated or permitted the violation of the provisions of any zoning ordinance enacted under this act or prior enabling laws shall, upon being found liable therefor in a civil enforcement proceeding commenced by a municipality, pay a judgment of not more than $500 plus all court costs, including reasonable attorney fees incurred by a municipality as a result thereof. No judgment shall commence or be imposed, levied or payable until the date of the determination of a violation by the district justice. If the defendant neither pays nor timely appeals the judgment, the municipality may enforce the judgment pursuant to the applicable rules of civil procedure. Each day that a violation continues shall constitute a separate violation. . . .
53 P.S. § 10617.2.

9. Under Section 617.2 of the MPC, district justices have initial jurisdiction over proceedings brought for violations of zoning ordinances. *Township of Lower Milford v. Britt,* 799 A.2d 965, 968 n. 4 (Pa.Cmwlth.2002).

appeal of the Zoning Enforcement Notice upheld by the Board. Because the majority of violations in the notice had been abated, the trial court observed that the only remaining issue was "whether the [Board] erred in finding that [Ruley] is operating a kennel." Trial Court Opinion, November 30, 2006, at 1. The trial court affirmed the Board's holding that Help the Animals was a kennel.

The trial court reasoned as follows. It found Ruley's house to be an "establishment" under the Pennsylvania Dog Law because it boards some dogs until they are adopted, and dogs are customary household pets. Notably, the trial court found that because Section 201 of the Zoning Ordinance incorporates the Pennsylvania Dog Law, Section 201 does not include an establishment that boards cats for compensation. Accordingly, if Help the Animals did not accept any dogs, Ruley could not be found to be operating a kennel. As to the final element of a kennel, i.e., compensation, the trial court deferred to the Board's interpretation that donations made to Help the Animals qualified as "compensation." In sum, because Help the Animals met the definition of a kennel, as set forth in Section 201, the trial court affirmed the Board.

On February 26, 2007, the trial court held a hearing for the purpose of ruling on the Township's complaint for fines and attorney fees. On March 26, 2007, the trial court entered an order imposing a $1,000 fine on Ruley, imposing $73.45 in costs and $16,659.60 in attorney fees, for a total award to the Township in the amount of $17,732.85. The present appeal followed.

On appeal,[10] Ruley raises two issues for our review. First, she argues that the Board erred in concluding that she violated the Zoning Ordinance by operating a kennel. Second, Ruley argues that the amount of attorney fees awarded is unreasonable, even if Help the Animals were found to be a kennel.

■ Turning to the first issue, Ruley argues that the trial court and the Board incorrectly construed Section 201 of the Zoning Ordinance and did so by deviating from its plain language. Ruley argues that whether a landowner operates a kennel for compensation is determined by looking at the intent of the landowner, not whether the landowner received gifts. Because Ruley did not establish Help the Animals for the purpose of making money, she argues it is not a kennel.[11] The Township counters that Help the Animals meets the definition of a kennel because (1) it is an establishment governed by the Pennsylvania Dog Law; (2) it is operated for one of the following purposes: trading, breeding, boarding, training, or grooming customary household pets; and (3) it receives compensation.

■ A zoning hearing board's interpretation of its own zoning ordinance is entitled to great deference and weight. *Arter v. Philadelphia Zoning Board of Adjustment*, 916 A.2d 1222, 1229 (Pa. Cmwlth.2007). "When interpreting zoning ordinances, this Court relies on the common usage of words and phrases and construes language in a sensible manner." *City of Hope v. Sadsbury Township Zoning Hearing Board*, 890 A.2d 1137, 1143–1144 (Pa.Cmwlth.2006). In addition, when

10. Where the trial court receives no additional evidence, our standard of review is to determine whether the Board committed an abuse of discretion or an error of law. *Feldman v. Zoning Hearing Board*, 89 Pa.Cmwlth. 237, 492 A.2d 468, 469 (1985).

11. Ruley also argues that the Board erred in concluding that a "donation" is "compensation." However, based on our disposition of the case, we will not address this argument.

construing zoning ordinances, courts must afford permitted uses the broadest interpretation so that a landowner may have the benefit of the least restrictive use of his or her land. *Pearson v. Zoning Hearing Board of Newlin Township,* 765 A.2d 1187, 1189 (Pa.Cmwlth.2001).

We return, again, to the definition of "kennel" found in Section 201; it defines "kennel" as

[a]n establishment under the Pennsylvania Dog Law [3 P.S. § 459–101—459–1205] *operated for the purpose of* trading, breeding, *boarding,* training, or grooming customary household pets *for compensation.*

ZONING ORDINANCE, § 201 (emphasis added).[12] We agree with Ruley that the trial court and the Board misinterpreted Section 201, which requires that Help the Animals be "operated *for the purpose of ... boarding ... for compensation* " (emphasis added). *Id.* It is the purpose of the establishment that determines whether or not it is a kennel, not whether it ever receives donations. The Board and the trial court did not consider Ruley's purpose in operating Help the Animals.

The second problem with the Board's interpretation is its assumption, without any analysis, that Ruley was "boarding" animals at her home. The Zoning Ordinance does not define "boarding." It does, however, refer to the Pennsylvania Dog Law, which defines a "boarding kennel" as:

Any kennel available to the general public where *dogs are housed or trained for compensation by the day, week or a specified or unspecified time.*

Section 102 of the Pennsylvania Dog Law, 3 P.S. § 459–102 (emphasis added). Stat-ed otherwise, the Pennsylvania Dog Law defines a "boarding kennel" as a bailment of dogs for compensation.

The Board found in its opinion that Ruley was housing animals at her home, but "boarding" is an action undertaken solely in return for compensation under the Zoning Ordinance and under the Pennsylvania Dog Law. No one compensated Ruley for housing their animals, and the donations from third parties do not constitute compensation for "housing" because the donations were not assigned a particular use. As explained by Ruley in her brief, there was "no evidence of donations and gifts given in return for specific actions. There is no *quid pro quo.*" Ruley's Brief at 13. According to the uncontradicted testimony of Dr. Godfry and Ruley, most donations are used to cover medical expenses and procedures and have nothing to do with Ruley's cost of housing the animals.

The purpose of Help the Animals is to rescue unwanted cats and dogs and save them from euthanization while a suitable home is found. Ruley did not establish Help the Animals to make a living. Indeed, she appears to make a living in order to support Help the Animals. Ruley accepts donations to defray the expenses of caring for the animals, but less than ten percent of the donations is ever used for housing expenses, *i.e.,* for food and litter. As such, Help the Animals does not fit within the definition of kennel found in Section 201 of the Zoning Ordinance, and the trial court erred in upholding the Board's decision that Ruley was operating a kennel. Accordingly, Ruley did not need a special exception under Section 601 of the Zoning Ordinance.

**12.** "Kennel" is defined in Section 102 of the Pennsylvania Dog Law, Act of December 7, 1982, P.L. 784, *as amended,* 3 P.S. § 459–102, as "[a]ny establishment wherein dogs are kept for the purpose of breeding, hunting, training, renting, research or vivisection, buying, boarding, sale, show or any other similar purpose and is so constructed that dogs cannot stray therefrom."

Ruley next challenges the imposition of attorney fees. Section 617.2 of the MPC, 53 P.S. § 10617.2, authorizes the imposition of attorney fees and fines upon a landowner found in violation of a zoning ordinance. Ruley argues that because the Township did not prevail in its primary litigation objective, which was to eliminate the cat rescue operation, it is not entitled to attorney fees. Ruley also asserts that an award of attorney fees totaling sixteen times the amount of the civil fine is absurd.[13] However, because we conclude that Ruley did not violate Section 601 of the Zoning Ordinance, she cannot be sanctioned under Section 617.2 of the MPC.[14]

Based on the foregoing, we reverse the order of the trial court upholding the decision of the Board that Ruley was operating a kennel. We also reverse the trial court's imposition of $17,732.85 in fines, costs and attorney fees.

### ORDER

AND NOW, this 13th day of May, 2008, the order of the Court of Common Pleas of Chester County in the above-captioned case, dated November 30, 2006, upholding the determination of the West Nantmeal Township Zoning Hearing Board that Phyllis Ruley operated a kennel in violation of the Zoning Ordinance is hereby REVERSED. In addition, the order of the Court of Common Pleas of Chester County dated March 26, 2007, assessing civil fines, court costs and attorney fees in the amount of $17,732.85 against Phyllis Ruley is hereby REVERSED.

---

13. "Appellate review of a trial court's order which awards attorney's fees to a litigant is limited solely to a determination of whether the trial court palpably abused its discretion when it made the fee award." *Township of South Whitehall v. Karoly,* 891 A.2d 780, 784 n. 5 (Pa.Cmwlth.2006).

14. The Township made it clear that it was only seeking fines, costs and attorney fees with respect to Ruley's alleged operation of a kennel. The Township did not seek to recover anything for Ruley's other Zoning Ordinance violations which were abated and ceased being part of the litigation. Specifically, in its pleadings, the Township sought a fine for every day Ruley operated a kennel and specified that "[a]ny bills which the Township avers should be paid by [Ruley] deal with the enforcement of the Zoning Ordinance against [Ruley] for the use of her property as an animal shelter/kennel." Plaintiff's Reply to Defendant's New Matter ¶ 64, R.R. 245a.