Louis GALZERANO, Appellant

v.

The ZONING HEARING BOARD OF TULLYTOWN BOROUGH.

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 2013.

Decided May 30, 2014.

---

Henry E. Van Blunk, Yardley, for appellant.

Michael T. Sellers, Newtown, for appellee Tullytown Borough.

BEFORE: LEAVITT, Judge, and BROBSON, Judge [1], and FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.

Louis Galzerano (Galzerano) appeals an order of the Court of Common Pleas of Bucks County (trial court), which affirmed the decision of the Zoning Hearing Board of Tullytown Borough (Board). In doing so, the trial court upheld the Board's deni-

---

1. This opinion was reassigned to the authoring judge on April 22, 2014.

al of Galzerano's application for a use and occupancy certificate to operate a crematory in a commercial building he leases in Tullytown Borough. For the reasons set forth below, we affirm.

Galzerano is the sole owner of Bucks County Crematories and has been a funeral director for more than 30 years. Galzerano operates a funeral home in Levittown, Bristol Borough, Bucks County. Galzerano's funeral home has an on-site crematory. In response to increased demand for cremation services, Galzerano sought to open a new crematory in Tullytown.

Galzerano entered into a lease agreement for a commercial building located at 71 Fox Drive in Tullytown. The building is approximately 4,321 square feet and is located in a Light Industrial (LI) District, across from a landfill. (Amended Reproduced Record (R.R.) 223a.) Mortuaries and funeral homes are permitted uses in the LI District under the Tullytown Borough Zoning Ordinance (Ordinance). (R.R. 184a.)

On October 28, 2011, Galzerano applied for a use and occupancy certificate for the property, identifying the proposed commercial use as a crematory. The Ordinance, however, does not include a commercial land use category for crematory. On November 22, 2011, Tullytown Borough's zoning officer denied the application because "a Crematory is not a permitted use in the Light Industrial Zoning District." (R.R. 85a.) Galzerano appealed to the Board, which held a hearing on January 26, 2012. At the hearing, Galzerano testified to the physical characteristics of the proposed crematory, its operation, and the associated environmental and health considerations. When asked whether funeral services would be conducted at the proposed crematory, Galzerano responded:

Yes. There would be situations especially dealing with different religions where they might—a family group might want to come and have a final prayer or some people might just want to witness the actual container going into the retort. There is (sic) various reasons why people might do this.

(R.R. 36a.) Galzerano also testified that the proposed crematory will serve customers from Galzerano's funeral home in Levittown and other area funeral homes. Indeed, he testified that the crematory will only accept bodies for cremation from a funeral home and will only release the remains to the funeral home of origin:

Q. After the process is done, what happens to the ashes?

A. They are swept out, processed and returned the next day to the funeral home of origin, back to the funeral home.

Q. Could somebody use the crematory services without going through the funeral home?

A. No.

(R.R. 37a.)

On February 23, 2012, the Board issued a decision and order denying Galzerano's application. The Board found that a crematory is most analogous to an incinerator use, which is permitted only in Tullytown Borough's Solid Waste District. (R.R. 90a.) The Board found that a crematory is only permitted in the LI District as an accessory use to a funeral home or mortuary, citing this Court's decision in *Rabenold v. Zoning Hearing Board of the Borough of Palmerton*, 777 A.2d 1257 (Pa. Cmwlth.2001). The Board also rejected Galzerano's claim that a crematory is the same use as a mortuary or funeral home, both of which are permitted uses in the LI District. It held that Galzerano failed to present any evidence to support such a claim.

Galzerano appealed to the trial court, which did not receive additional evidence. On March 12, 2013, based on the record before the Board, the trial court denied Galzerano's appeal. In its opinion in support of its order, the trial court held that the proposed crematory does not fall under the commonly accepted definition of a "funeral home," because its primary purpose will be to perform cremation services for funeral homes (Galzerano's and others) and funeral services would only be held at the crematory in certain limited circumstances. Galzerano appealed to this Court.

■ Our review in land use appeals where the trial court takes no additional evidence is limited to determining whether the zoning hearing board committed an error of law or abused its discretion. *Coal Gas Recovery, L.P. v. Franklin Twp. Zoning Hearing Bd.,* 944 A.2d 832, 837–38 (Pa.Cmwlth.2008). On appeal, Galzerano argues that the Board erred in denying his application for a use and occupancy certificate, because, under the Ordinance, a crematory is a permitted use in the LI District. Specifically, Galzerano contends that because the Ordinance does not define or even mention crematories, the Board should have construed the Ordinance in his favor and against any implied restriction on his use of the property.[2]

■ Whether a proposed use falls within a given category of permitted uses in a zoning ordinance is a question of law. *H.E. Rohrer, Inc. v. Zoning Hearing Bd. of Jackson Twp.,* 808 A.2d 1014, 1016 (Pa.

Cmwlth.2002). "[A] zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference" because, "as the entity charged with administering a zoning ordinance, [it] possesses knowledge and expertise in interpreting that ordinance." *City of Hope v. Sadsbury Twp. Zoning Hearing Bd.,* 890 A.2d 1137, 1143 (Pa.Cmwlth.2006). In interpreting zoning ordinances, this Court relies upon the common usage of the words and phrases contained therein and will construe that language in a sensible manner. *Ruley v. West Nantmeal Twp. Zoning Hearing Bd.,* 948 A.2d 265, 269 (Pa.Cmwlth.2008). Accordingly, the mere fact that the Ordinance does not provide a definition of "funeral home" does not itself render the Ordinance ambiguous. In this situation, we look to guidance from definitions found in statutes, regulations, or the dictionary. *H.E. Rohrer, Inc.,* 808 A.2d at 1017.

■ The word crematory does not appear in the Ordinance. Galzerano's primary contention, then, is that the Board should have granted his use application because his proposed crematory is a funeral home, which is a permitted use in the LI District. Under a commonly accepted definition, a "funeral home" is "an establishment with facilities for the preparation of the dead for burial or cremation, for the viewing of the body, and for funerals." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 922 (2002).[3] Applying this com-

---

2. Galzerano also argues that the crematory should be permitted as an accessory use because it will operate in conjunction with his existing funeral home. However, the Ordinance explicitly states that an accessory use must be "located on the same lot with a principal use." (R.R. 326a.) Galzerano's existing funeral home in Levittown is not located on the property at issue. Accordingly, the

proposed crematory cannot be considered an accessory use to the Levittown funeral home.

3. A "mortuary," also a permitted use in the LI District, is "a place in which dead bodies are kept until burial." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1473 (2002). Galzerano does not argue that the proposed crematory is a mortuary.

monly accepted definition,[4] we agree with the trial court that the proposed stand-alone crematory is not a funeral home.[5] A use for "the preparation of the dead for burial or cremation" is not the same as a use where the actual burial or cremation occurs.[6] If it were, a cemetery would be a funeral home. Moreover, funeral homes are generally understood as facilities that provide professional services directly to the families and loved ones of the deceased. Galzerano testified before the Board, however, that the crematory will not be open to the public. When asked specifically whether a family or loved one could secure the services of the proposed crematory directly, Galzerano testified

that they could not. Instead, they would have to go through a funeral home, his or other funeral homes to which his proposed crematory would provide services. In his own testimony before the Board, then, Galzerano drew distinctions between the proposed stand-alone crematory and a funeral home.[7]

For these reasons, we see no reversible error by the Board or the trial court in differentiating between a funeral home, which provides professional services to the public on one hand, and a stand-alone crematory that provides cremation services to funeral homes on the other.[8] Accordingly, we affirm the trial court's order.

4. Our decision in this matter should not be interpreted as foreclosing the possibility that another municipality's zoning ordinance might define the term "funeral home" more broadly to include crematories. In that case, the ordinance definition would control.

5. Like the Board, we also take some guidance from the Funeral Director Law (Act), Act of January 14, 1952, P.L. (1951) 1898, *as amended*, 63 P.S. §§ 479.1–.20, which requires those who provide services within a funeral establishment (*i.e.*, funeral home) to be licensed. The licensing requirement of the Act, however, does not extend to "[e]mployees of any cemetery or crematory whose duties or business extend no further." Section 13(a)(1) of the Act, 63 P.S. § 479.13(a)(1). The exclusion further supports the Board's conclusion that the proposed stand-alone crematory is a use separate and distinct from that of a funeral home.

6. In *Rabenold*, faced with an ordinance that defined neither funeral home nor crematory, this Court recognized crematories and funeral homes as distinct, but related uses:

[T]he operation of a crematory is an ancillary service of a funeral home.... Both funeral homes and crematories deal with the final disposition of human remains through either internment or cremation. Cremation is a use that is incidental or subordinate to the operation of a funeral home, and constitutes both a permitted use

and a permitted accessory use to that of the principal use, a funeral home.

*Rabenold*, 777 A.2d at 1263. Although *Rabenold* arose in a different procedural context and involved a different ordinance, our recognition in *Rabenold* of crematories as either principal uses in their own right or uses accessory to funeral homes would have been unnecessary if stand-alone crematories are equivalent to funeral homes. A crematory can be either a permitted principal use or an accessory use to a funeral home. But a stand-alone crematory (leased space that houses a cremation chamber) is not a funeral home.

7. In his brief on appeal, Galzerano continues to draw distinctions between a stand-alone crematory and a funeral home, even while he attempts to argue that they are indistinguishable. At page 20 of his brief, Galzerano writes: "It would be unjust to require Appellant to expend a great deal of time and money to establish and operate a new funeral home at the Demised Property merely to permit him to operate a crematory at the location." This appears to be a recognition by Galzerano that a funeral home requires more than a leased warehouse space that houses retorts.

8. The only issue in this appeal is whether the zoning officer and the Board erred in denying Galzerano's application to locate the crematory in the LI District by concluding that the proposed crematory is not a funeral home, which is a permitted use in the district. In upholding that denial, it is not necessary for

## ORDER

AND NOW, this 30th day of May, 2014, the order of the Court of Common Pleas of Bucks County dated March 12, 2013, in the above-captioned matter is hereby AFFIRMED.

## DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent. Because the Tullytown Borough Zoning Ordinance does not define or even mention crematories, the Board and the trial court should have construed the Ordinance in Galzerano's favor and against any implied restrictions on his use of his property. Accordingly, I would reverse.

As noted by the majority, a zoning hearing board's interpretation of its own zoning ordinance is generally entitled to great weight and deference. *City of Hope v. Sadsbury Township Zoning Hearing Board,* 890 A.2d 1137, 1143 (Pa.Cmwlth. 2006). However,

[i]t is fundamental that restrictions imposed by zoning ordinances are in derogation of the common law and must be strictly construed. Such restrictions must not be so construed as to fetter the use of the land by implication. The permissive widest use of the land is the rule and not the exception, unless specif-

ically restrained in a valid and reasonable exercise of the police power.

*Fidler v. Zoning Board of Adjustment of Upper Macungie Township,* 408 Pa. 260, 182 A.2d 692, 695 (1962) (citations omitted). Thus, zoning ordinances that are clear and free from any ambiguity are not open to interpretation, but ambiguous language is to be read in a property owner's favor and against any implied extension of a restriction. *Isaacs v. Wilkes–Barre City Zoning Hearing Board,* 148 Pa.Cmwlth. 578, 612 A.2d 559, 561 (1992). In interpreting zoning ordinances, this Court relies upon the common usage of the words and phrases contained therein and will construe that language in a sensible manner. *Ruley v. West Nantmeal Township Zoning Hearing Board,* 948 A.2d 265, 269 (Pa.Cmwlth.2008).

In the present case, the word "crematory" does not appear in the Ordinance. Funeral homes and mortuaries are permitted uses in the LI District, but the Ordinance does not define those terms. Under a commonly accepted definition, a "funeral home" is "an establishment with facilities for the preparation of the dead for burial or cremation, for viewing of the body, and for funerals." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 922 (2002).

Galzerano testified about the operations of the proposed crematory, which will in-

---

us to examine, in the context of this appeal, where, if at all, in Tullytown Borough Galzerano can or should site the proposed crematory. Nonetheless, we are troubled by the Board's conclusion that the proposed crematory "clearly falls" within the Ordinance's definition of "incinerator" and thus can or should be sited in the Solid Waste District. (R.R. 90a.) Because the Ordinance definition of "incinerator" refers to the disposal by combustion of only municipal waste (*id.*), the Board would necessarily have to conclude that human remains are municipal waste. That such a conclusion could withstand judicial scrutiny is dubious. *See* Section 103 of

the Solid Waste Management Act, Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. § 6018.103 (defining "municipal waste" as including "[a]ny garbage, refuse, industrial lunchroom or office waste and other material including solid, liquid, semisolid or contained gaseous material resulting from operation of residential, municipal, commercial or institutional establishments and from community activities and any sludge not meeting the definition of residual or hazardous waste hereunder from a municipal, commercial or institutional water supply treatment plant, waste water treatment plant, or air pollution control facility.").

clude preparing bodies for cremation and then performing the cremation. He also testified that some funeral services would be held at the crematory. In light of the foregoing uncontested testimony, and construing the Ordinance in the least restrictive manner, I would hold that Galzerano's proposed crematory is analogous to a "funeral home" because it will serve many of the same functions as a funeral home.

I disagree with the majority's reliance upon *Rabenold v. Zoning Hearing Board of the Borough of Palmerton*, 777 A.2d 1257 (Pa.Cmwlth.2001). In that case, the landowner was permitted to operate a crematory as an accessory use to an existing funeral home, which had been allowed as a permitted "retail use" under the applicable zoning ordinance. *Rabenold* is inapposite because it involved a different zoning ordinance than the one at bar. The Court did not announce a statewide rule that a crematory can only be allowed where it is next to or part of a traditional funeral home. Nor did *Rabenold* establish that a crematory cannot be a principal use in Tullytown Borough. In so holding, the majority overlooks Galzerano's uncontested testimony that funeral services will be conducted in the crematory. Such testimony was neither elicited nor necessary in *Rabenold* because the landowners in that case intended to operate their crematory in a physical addition to their existing funeral home.

Finally, the majority discusses, but does not overrule, the Board's finding that the proposed crematory use "clearly falls within the definition of an incinerator." Reproduced Record at 90a. I would hold that the Board erred in that regard. The Ordinance defines an "incinerator" as a facility "consist[ing] of ... furnaces" that is "designed to reduce municipal waste by combustion." ORDINANCE § 185–19(J)(2). Although an incinerator and a crematory both contain a furnace, a crematory is not designed to dispose of municipal solid waste. The Board's contrary, and unfortunate, finding fails to afford human remains the respect and dignity to which they are entitled and do receive from funeral homes. This leaves unanswered the question of whether a stand-alone crematory is allowed anywhere in the Borough.

For all of these reasons I would reverse the trial court's order affirming the Board's denial of Galzerano's application for a use and occupancy certificate.