River's Edge Funeral Chapel and : 
Crematory, Inc. : 
                               :   No. 22 C.D. 2016
                               :
              v.                 :
                               :   Argued: October 18, 2016
The Zoning Hearing Board of : 
Tullytown Borough : 
                               :
Appeal of: The Borough of Tullytown : 


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JULIA K. HEARTHWAY, Judge
                HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge **(P.)**


OPINION BY
JUDGE McCULLOUGH                                  FILED: November 16, 2016


        The Borough of Tullytown (the Borough) appeals from the December 22, 2015 order of the Court of Common Pleas of Bucks County (trial court), which reversed the Borough's Zoning Hearing Board's (Board) order affirming a Borough zoning officer's decision to deny River's Edge Funeral Chapel and Crematory, Inc.'s (Appellee) application for a Use and Occupancy Certificate to operate a funeral home.


### Facts and Procedural History

        Appellee is the lessee of property located at 70 Fox Drive, Tullytown, Pennsylvania (the property). The property contains an improved commercial building (the building) and is located in the Borough's Light Industrial (LI) Zoning

District. Pursuant to the Borough's zoning ordinance (Ordinance), a funeral home is a permitted principal use in the LI Zoning District. However, the Ordinance prohibits a crematory as a principal use in the LI Zoning District, although a crematory is permitted as an accessory use in the same.

In September 2013, Appellee filed an application for a Use and Occupancy Certificate with the Borough, seeking to operate a funeral home and crematory at the property. After several requests for additional information by the Borough's zoning officer, the complete application was received on October 15, 2014. In its application, Appellee submitted a narrative describing the services it would provide at the property, stating that:

> [W]e will complete all duties and services associated with the running of a state licensed funeral facility. That includes: meeting with clients, arrangements, embalming, cremating, dressing of deceased, casketing, and conducting funeral services as needed. These would be exactly the same goods and services provided by my other state licensed funeral facility located at 3500 Bristol Oxford Valley Road in Levittown, PA.

(Reproduced Record (R.R.) at 92a.)

Appellee also provided a site plan of the property that identified the interior and exterior spaces of the building, a copy of its lease agreement, and proof of business registration with the Commonwealth. (R.R. at 86a-91a.)

On October 28, 2014, the Borough's zoning officer denied Appellee's application, reasoning that, although Appellee indicated that the proposed use was a funeral home with accessory crematory use, "[i]t appears the crematory will be the principal use at the property." (R.R. at 94a.)

Appellee filed a timely appeal to the Board, arguing that the zoning officer improperly denied its application because the property's principal use was a

2

funeral home. Appellee acknowledged that cremation would be an accessory use to its funeral home; however, it noted that cremation is a permitted accessory use in the Borough's LI Zoning District. On January 7, 2015, the Board held a hearing where witnesses and several Borough residents testified.

At the hearing, Mike Schiller, a licensed funeral director and an employee at the Galzerano Funeral Home, testified that, if Appellee's application is approved, he will work as an on-site supervisor at Appellee's funeral home. He worked as a supervisor of funeral homes for forty years and explained that Appellee's funeral home would provide traditional funeral services if requested, which would include a service, a viewing, and transporting the body to a cemetery. Schiller explained that he would meet with customers at Appellee's funeral home, that the funeral home will contain a morgue, and that it will also contain a crematory. (R.R. at 194a-95a.)

Schiller further testified that he would be present at the funeral home from 8:00 a.m. to 5:00 p.m., Monday through Friday, as well as additional hours upon request. Appellee would advertise its funeral home services to the public through the local newspaper, radio stations, and television. Schiller further explained that Appellee is attempting to provide an economical approach to funeral services where a consumer's funeral costs may be significantly reduced due to decreasing the building's extravagance. He again confirmed that traditional funerals would be conducted at the property upon request by the public, that viewings would be held at the same, and explained that the public could visit the property to discuss funeral arrangements. (R.R. at 197a-200a.)

Schiller further testified that the Galzerano Funeral Home provides traditional funerals, day and nighttime viewings, and cremations with viewings and

3

direct cremations. He stated that, at the Galzerano home, members of the public visit to discuss arrangements, enter into contracts, and attend viewings and noted that the Galzerano home operates as a funeral home and a crematory. Schiller further stated that a location's appearance is an important factor for a funeral home in a competitive market and acknowledged that the Galzerano home appears different than the building on the property. (R.R. at 201a-06a.)

Regarding the differences between the Galzerano home and the building on the property, Schiller explained that the Galzerano home is owned outright by Mr. Galzerano, that he has invested substantial resources to improve the same, and that it is valued at approximately $3.5 million. In contrast, Schiller testified that Appellee is offering an economical approach to funeral services. Schiller acknowledged that Appellee is owned by Mrs. Galzerano and that she is the wife of Mr. Galzerano; however, he clarified that Appellee is an entity in and of itself and will solicit and receive orders for funerals and cremation services from the public, but not other funeral homes. Schiller stated that Appellee is a standalone operation that will not perform cremation services for the Galzerano home. (R.R. at 208a-12a.)

Sally Bellaspica, the Borough's zoning officer, testified that a funeral home is a use-by-right in the LI Zoning District and explained that a crematory is permitted as an accessory use in the same. She stated that she reviewed the property's layout and determined that the principal use would be a crematory with the possibility of funeral service operations because the site plan indicated that the building had rooms containing retorts, or cremators, which would be used for crematory use. She further stated that, prior to reviewing Appellee's application, she had never reviewed an application for approval of a funeral home while working for the Borough, never inspected a facility comparable to that presented in Appellee's

4

application, and had not contacted the Commonwealth to inquire how the state determines what constitutes a funeral home. (R.R. at 213a-16a.)

In addition to reviewing the property's layout, Bellaspica testified that she considered the property's location in denying Appellee's application; specifically, she considered that the property was located in an industrial area. She stated that she drove past the property and observed a warehouse, which did not look like a typical funeral home. She also noted that she considered a 2011 application for a Use and Occupancy Certificate to operate a crematory on the property when making her determination.[1] (R.R. at 216a-24a.)

Bellaspica noted that Appellee's application was submitted by the same principal that submitted the 2011 application, and that she rejected Appellee's application as incomplete because it did not contain a proposed use and requested additional information six times before Appellee's application stated a proposed use, which it identified was a funeral home with an accessory crematory use. According to Bellaspica, the floor plan Appellee submitted was basically the same as that submitted in 2011 except that Appellee's application contained more labeling, which she had directed Appellee to include. Bellaspica testified that the two cremators were in the same location on both the 2011 application and Appellee's application and, consequently, she believed the property's principal use would be a crematory. (R.R. at 225a-29a.)

Kathy Ryan, general counsel for the Pennsylvania Funeral Directors Association, testified that there are numerous state licensing requirements for a funeral home in Pennsylvania. For example, she stated that the entity seeking

---

[1] The Board sustained Appellee's counsel's objection that the 2011 application not be admitted. (R.R. at 192a-93a; Board's Finding of Fact at No. 14.)

5

licensure must have a business entity license, the location must have a supervisor, and that cremation services may only be offered to the public through a licensed funeral director who may only practice through a licensed funeral home. While cremation services may only be offered to the public by a licensed funeral director through a licensed funeral home, Ryan noted that, conversely, a licensed funeral director is not necessary if the entity solely provides cremation services to other funeral homes and not to the public. (R.R. at 234a, 240a-41a, 261a-62a.)

Ryan further testified that offering cremation services does not preclude offering other services. According to Ryan, even if cremation is the final form of disposition, other services likely accompany the cremation, which requires proper licensure. Ryan stated that a Use and Occupancy permit is necessary to receive a license to operate a funeral home. She explained that, based upon her inspection of the property, it met the elements required to constitute a licensed funeral home absent decorations and furnishings, which she opined could be obtained and installed in one day. Specifically, Ryan stated that the building contained a room for viewing, a room for embalming, a chapel or area for the service to be performed, and a garage to accommodate vehicles that transport bodies. (R.R. at 242a-43a, 260a-61a.)

Additionally, Borough residents asked questions and offered testimony, which may be summarized as inquiries regarding parking at the property, the chapel's capacity, the amount of anticipated savings using Appellee's marketing model, and concerns that Appellee was attempting to operate a crematory at the property using a back-door method and regarding the impact of the crematory operation on the quality of the air. (R.R. at 270a-77a.)

By order dated February 17, 2015, the Board denied Appellee's application, concluding that:

6

In the present appeal, the record supports the Zoning Officer's finding that the crematory use will not be incidental or subordinate to the use of the property as a funeral home, but rather its principal use. The location and appearance of the building which is intended to house the funeral chapel and crematory is not suitable for a funeral home use and clearly indicates that the applicant's intention is to use the subject premises primarily for cremations. Moreover, the Property was the subject of a prior appeal to the Board in which the applicant was seeking to use the Property solely as a crematory. Thus, it is clear that the crematory is intended to be the primary or principal use of the Property, which is not permitted in an LI-Light Industrial District. Therefore, this Board must deny the applicant's appeal of the denial of its application for a Use and Occupancy Certificate.

(R.R. at 341a-42a.)

Appellee filed an appeal to the trial court, which did not receive additional evidence, and argued that the Board erred in finding that the crematory was the property's principal use based on its location, current appearance, and the prior, unrelated application for a Use and Occupancy Certificate to operate a crematory. By order dated December 22, 2015, the trial court reversed the Board's decision and ordered that a Use and Occupancy Certificate be issued as requested in Appellee's application.

In its opinion, the trial court reasoned that the evidence the Board relied upon when making its determination, i.e., the property's location, appearance, and the prior application to operate a crematory, did not constitute substantial evidence that a reasonable mind would find adequate when viewed in light of the overall record. The trial court noted that Appellee's plot plan indicated that the building would include a chapel, a greeting area, and public restrooms in addition to the crematory and other preparation rooms. The trial court also noted that only twelve percent of the building's total area would be allotted to the crematory operation and that Appellee

7

indicated that it would offer various services at the property, including meeting with clients, making funeral arrangements, embalming, casketing, and dressing the deceased. According to the trial court, a crematory would not offer the majority of services that Appellee intends to offer.

The trial court further noted that Appellee hired Schiller to be the supervisor of its funeral home, which would be unnecessary if Appellee's intent was to operate a crematory. Consistent with Ryan's testimony, the trial court concluded that Appellee would satisfy each element necessary to be a licensed funeral home in the Commonwealth. The trial court reasoned that the property's location in an industrial park in the LI Zoning District was not a compelling reason for denying Appellee's application because the Ordinance permits a funeral home as a principal use within the same. Similarly, the trial court determined that the Board's finding that the building's appearance was not suitable for a funeral home was not supported by Pennsylvania law or the Ordinance and, thus, there was no basis to deny Appellee's application on those grounds. Finally, the trial court determined that the Board improperly relied on Mr. Galzerano's prior application to operate a crematory at the same location. Specifically, it reasoned that:

> In order to maintain that Appellee's true goal is to operate a crematory, despite the overwhelming evidence presented to the contrary, Appellant would essentially need to believe that Appellee will either not make any attempt to operate a funeral home, or is engaged in a ruse that will see a crematory operate behind the façade of a funeral home. Even if Appellant is ultimately proved correct that Appellee is inauthentic in its stated purpose, Appellant now seeks to hold a facially meritorious application accountable for a suspected future violation, which would ultimately be an enforcement issue to act upon once the violation occurs.

(R.R. at 386a-87a.)

8

On appeal to this Court,[2] the Borough asserts that the trial court erred because the record evidence shows that the property's principal use would be a crematory, not a funeral home. The Borough argues that the Board's decision was supported by substantial evidence and no abuse of discretion or error of law occurred. The Borough also argues that the trial court erred because it accepted testimony from Appellee's purported expert when the same was not submitted to the Borough's zoning officer for consideration and the trial court further erred in dismissing the history of Mr. Galzerano's 2011 application for a crematory. Finally, the Borough avers that its decision was supported by Pennsylvania law and the Ordinance.

Conversely, Appellee argues that the trial court's decision was proper because the property's principal use would be a funeral home and maintains that the 2011 application for a crematory did not constitute substantial evidence to justify the Board's denial of Appellee's application. Moreover, Appellee avers that the trial court properly considered the expert testimony and correctly concluded that the Board's decision was not supported by the Ordinance or Pennsylvania law.

---

[2] When no additional evidence is taken following the determination of a zoning hearing board, this Court's review is limited to determining whether the zoning hearing board committed an error of law or a manifest abuse of discretion. *H.E. Rohrer, Inc. v. Zoning Hearing Board of Jackson Township*, 808 A.2d 1014, 1016 n.1 (Pa. Cmwlth. 2002). An abuse of discretion occurs when findings are not supported by substantial evidence. *Coal Gas Recovery, L.P. v. Franklin Township Zoning Hearing Board*, 944 A.2d 832, 838 n.9 (Pa. Cmwlth. 2008). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*.

9

**Discussion**

Because the term "funeral home" is not defined in the Ordinance, we must determine whether the property's proposed use would constitute a funeral home and, if so, whether the funeral home use would be the property's principal use.

In interpreting zoning ordinances, this Court relies upon the common usage of the words and phrases contained therein and will construe that language in a sensible manner. *Ruley v. West Nantmeal Township Zoning Hearing Board*, 948 A.2d 265, 269 (Pa. Cmwlth. 2008). An undefined term is given its plain meaning and "*any doubt is resolved in favor of the landowner and the least restrictive use of the land.*" *H.E. Rohrer, Inc. v. Zoning Hearing Board of Jackson Township*, 808 A.2d 1014, 1016-17 (Pa. Cmwlth. 2002) (emphasis in original). This Court may consult definitions found in statutes, regulations, or the dictionary for assistance when defining an undefined term. *Id.* at 1017. However, a phrase must be interpreted in context and read together with the entire ordinance. *Id.*

A "funeral home" is defined as "an establishment with facilities for the preparation of the dead for burial or cremation, for the viewing of the body, and for funerals." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 472 (10th ed. 2001). Similarly, although it does not define a funeral home, the Funeral Director Law[3] defines a "funeral establishment" as "every place or premise approved by the State Board of Funeral Directors wherein a licensed funeral director conducts the professional practice of funeral directing including the preparation, care and funeral services for the human dead." Section 2 of the Funeral Director Law, 63 P.S. §479.2(6); *see also Galzerano v. Zoning Hearing Board of Tullytown Borough*, 92 A.3d 891, 895 n.5 (Pa. Cmwlth. 2014) (consulting the Funeral Director Law when

_____
[3] Act of January 14, 1952, P.L. 1898, *as amended*, 63 P.S. §§479.1 – 479.20.

10

interpreting an undefined zoning ordinance term). Moreover, the relevant regulation provides that a funeral establishment shall contain: (1) a preparation room for preparation of human remains; (2) a proper area or room for the reposing of human remains; and (3) restroom facilities. 49 Pa. Code §13.94.

Based on these definitions of a funeral home and a funeral establishment, it is apparent that the property would constitute a funeral home. Consistent with the dictionary definition, Schiller testified that Appellee would provide traditional funerals at the property which would include a service, a viewing, and transporting of the body to a cemetery. Similarly, Ryan testified that the property met the elements necessary to constitute a licensed funeral home in Pennsylvania. The property, as indicated by the plot plan and Schiller's testimony, contains facilities for the preparation of the dead for burial or cremation, for viewing, and for funerals. Moreover, consistent with Schiller and Ryan's testimony, Appellee hired Schiller as a supervising funeral director, which is necessary to offer funeral services to the public. Therefore, it is clear that the property's proposed use would constitute a funeral home because it would provide services a funeral home offers and employs the individuals required to offer licensed funeral services to the public.

**Principal Use**

Next, we must determine whether the property's principal use would be a funeral home or a crematory.

Whether a proposed use falls within a given zoning ordinance categorization is a question of law. *H.E. Rohrer,* 808 A.2d at 1016. Generally, a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference. *City of Hope v. Sadsbury Township Zoning Hearing Board*,

890 A.2d 1137, 1143 (Pa. Cmwlth. 2006). However, it is fundamental that ordinances are to be construed expansively such that the landowner is afforded the broadest possible use and enjoyment of his or her land. *H.E. Rohrer*, 808 A.2d at 1016. "The size and scope of an accessory use is a factor the [zoning hearing board] must consider in determining whether a use is subordinate and incidental to a principal use." *Tennyson v. Zoning Hearing Board of West Bradford Township*, 952 A.2d 739, 745 (Pa. Cmwlth. 2008).

Here, the scope of the proposed crematory use is not clear from the record and the Board made no express finding regarding the same. However, the Board found that "[t]he total area dedicated to the crematory, as shown on the plan, is 428 square feet or twelve percent (12%) of the total building area." (Board's Finding of Fact at No. 22.) The size of the use, although not determinative, suggests that the crematory use would be an accessory use on the property because it constitutes only a slight portion of the building's total area. Similarly, although the Board did not reduce the space dedicated to a funeral home to an express finding, the plot plan, as well as Ryan's testimony, suggest that a large portion of the building's space is dedicated to funeral home related services, such as: a room for viewing; a morgue; a room for embalming; a chapel; and a garage to accommodate vehicles that would be transporting bodies. The existence of these spaces dedicated to funeral services indicates that a funeral home would not be an accessory use on the property; rather, the property's principal use would be a funeral home.

Similarly, as Ryan testified and the trial court found after its own independent review, the property met all the necessary criteria to operate as a funeral home under Pennsylvania law. (Board's Finding of Fact at No. 24.) Appellee also hired Schiller, a funeral director with over forty years' experience, to serve as the

12

supervisor at its proposed funeral home, a necessary prerequisite to offering funeral services to the public. *See Galzerano*, 92 A.3d at 895 ("Moreover, funeral homes are generally understood *as facilities that provide professional services directly to the families and loves ones* of the deceased") (emphasis added).

In the Board's decision and the Borough's brief before this Court, much is made of the 2011 application for a crematory that involved the property, asserting that it indicates that the current application for a funeral home is a pretext to operate a crematory. We disagree.

As a legal matter, the Board sustained Appellee's counsel's objection to the admission of the 2011 application into the record. (R.R. at 192a-93a; Board's Finding of Fact at No. 14.) Although not bound by the Pennsylvania rules of evidence, the Board must base its findings on record evidence only. *See Van Sciver v. Zoning Board of Adjustment of Philadelphia*, 152 A.2d 717, 722 (Pa. 1959). Therefore, its consideration of the 2011 application was erroneous. As a practical matter, the relevance of the 2011 application is unclear to this Court because the 2011 application was filed by a different applicant for a different purpose. The resolution of the 2011 application before this Court highlights the differences in Appellee's application.

In *Galzerano*, the plaintiff filed an application for a Use and Occupancy Certificate to operate a crematory in the LI Zoning District. He testified before the Board that the crematory *would not be open to the public* and that *a family or loved one could not secure the services of the proposed crematory directly*; rather, the proposed crematory would provide services to other funeral homes. The Board denied the plaintiff's application, reasoning that a crematory is only permitted as an accessory use in the zoning district and is not the same as a funeral home or a

13

mortuary, both of which were permitted uses in the same. According to the Board, a crematory was more analogous to an incinerator use, which is only permitted in another zoning district. The plaintiff appealed to the trial court, which affirmed the Board and concluded the proposed use does not constitute a funeral home because its primary purpose would be to perform cremation services for other funeral homes and would only conduct funeral services in limited circumstances.

On appeal to this Court, the plaintiff argued that a crematory constitutes a funeral home and also argued that it would be unjust to require him to expend a great deal of time and resources to operate a new funeral home merely to operate a crematory. We noted that a funeral home is an establishment with facilities for the preparation of the dead for burial or cremation, for the viewing of the body, and for funerals and reasoned that a use for the *preparation* of the dead for burial or cremation is not the same as a use where *actual* burial or cremation occurs. We also noted that the plaintiff would not be offering services to the public and, therefore, the Board did not err in differentiating between a funeral home and a standalone crematory.

Although involving the same property, the 2011 application was filed by a different applicant, for a different purpose, and is substantially different than Appellee's application. Unlike the plaintiff in *Galzerano*, Appellee would offer services directly to the public. Moreover, Mr. Galzerano planned to only offer funeral services in limited circumstances whereas Appellee plans to offer a variety of funeral services at the property. Therefore, notwithstanding its legal infirmity, the practical relevance of the 2011 application is unclear and is not evidence a reasonable mind would find adequate to support the conclusion that the property's principal use would be a crematory. Indeed, in the present matter, Appellee did precisely what the

14

plaintiff in *Galzerano* argued was unjust: expended time and resources to operate a funeral home in addition to operating a crematory.

Regarding the Borough's argument that the Board's determination was proper because the property's location and the building's appearance made it unsuitable for a funeral home, we also disagree.

The property's location, in the LI Zoning District, is where the Borough determined that a funeral home should be located. The Borough is the entity authorized with determining the propriety of the use on the property, not the Board. *See Hill v. Zoning Hearing Board of Maxatawny Township*, 597 A.2d 1245, 1248 (Pa. Cmwlth. 1991) ("[I]t is the governing body of the municipality which has the power to enact laws to regulate land use pursuant to the police power."). Similarly, there is no authority in the Ordinance or Pennsylvania law indicating that a building's appearance is a sufficient basis to deny a use-by-right or is even a valid consideration when determining whether a property's principal use constitutes a funeral home. *See Riverside Development Group, LLC v. City of Harrisburg Zoning Hearing Board*, 109 A.3d 358, 364 (Pa. Cmwlth. 2015) ("Zoning boards . . . must not impose their concept of what the zoning ordinance should be, but rather their function is only to enforce the zoning ordinance in accordance with applicable law."); *see also Tennyson*, 952 A.2d at 746 ("A special exception is not an exception to the zoning ordinance but, rather, a permitted use, allowed by the applicable legislation so long as specifically listed standards are met.").

The size of the crematory use in the building is minimal, suggesting it would be an accessory use, not a principal use, whereas the size of the proposed funeral home use would be significant, containing facilities to perform services typically offered by a funeral home. Similarly, the property meets the requirements

to be a licensed funeral home in Pennsylvania and Appellee hired a supervisor for its funeral home, which is necessary to offer funeral services to the public. Moreover, the Borough, not the Board, is the entity authorized to determine where a use is permitted and has already determined that a funeral home is a proper use in the LI Zoning District. Additionally, there is no authority, under the Ordinance or applicable Pennsylvania law, for the Board to consider a building's appearance when considering whether it constitutes a funeral home. Therefore, construing the Ordinance expansively such that Appellee is afforded the broadest possible use and enjoyment of its land, we conclude that the property's principal use would be a funeral home, not a crematory.

## 2011 Application for Crematory

The Borough next argues that the trial court erred in dismissing the 2011 application as evidence of whether the property's principal use is a crematory.

As articulated above, the Board sustained Appellee's counsel's objection to the admission of the 2011 application into the record. Therefore, it would have been erroneous for the trial court to consider the 2011 application because it was not record evidence. Moreover, as previously explained, the relevance of the 2011 application is suspect because it was submitted by a different applicant who proposed a significantly different use that would be offered to other funeral homes. Therefore, we discern no error in the trial court's treatment of the 2011 application.

## Substantial Evidence

The Borough also argues that its decision was supported by substantial evidence and, therefore, the trial court's reversal was improper.

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Coal Gas Recovery, L.P. v. Franklin Township Zoning Hearing Board*, 944 A.2d 832, 838 n.9 (Pa. Cmwlth. 2008).

The evidence the Board relied on when making its determination was the building's location, its appearance, and the 2011 application. As articulated above, the Borough is the entity authorized to enact regulations governing land use, not the Board. Indeed, the Borough has determined, via promulgation of the Ordinance, that the LI Zoning District is a suitable location for a funeral home. The Board may not circumvent that determination and is required to enforce the Ordinance, not how the Board believes the Ordinance should be enforced. Similarly, there is no authority in the Ordinance or Pennsylvania law indicating that a building's appearance is a valid consideration when determining whether a property's use constitutes a funeral home, or is a sufficient basis to deny a use-by-right. Finally, notwithstanding that the 2011 application was excluded from the record, its relevance to the present matter is questionable because it was submitted by a different applicant who proposed a significantly different use that would not be offered to the public.

Therefore, based on the irrelevant and arbitrary nature of the evidence the Board relied upon, we conclude that the trial court did not err in reversing the Board because its decision was not supported by evidence that a reasonable mind would accept as adequate to support the conclusion that the property's principal use would be a crematory.

17

## Expert's Testimony

The Borough avers that the trial court erred in considering the testimony of Ryan because it was not originally submitted to the Borough's zoning officer and should not have been introduced at a later date.

The relevant testimony was proffered before the Board. However, the Borough did not make this specific objection to the Board, or complain of the same before the trial court. *See Eltoron, Inc. v. Zoning Hearing Board of City of Aliquippa*, 729 A.2d 149, 153 (Pa. Cmwlth. 1999). Therefore, the issue is waived. *See* Pa.R.A.P. 302(a).

## Sufficiency of the Board's Decision

Finally, the Borough argues that the Board's decision was supported by the Ordinance and Pennsylvania law. The Borough cites no authority for this proposition except for the 2011 application and this Court's decision in *Galzerano*. However, as articulated above, the 2011 application was not admitted into the record and, even if it was, is not relevant to the present action because it was submitted by a different applicant for a different use. Similarly, there is no authority in the Ordinance or Pennsylvania law authorizing the Board to consider the building's appearance when making its determination whether the property's principal use is a funeral home. Moreover, as previously stated, the Board must not impose its concept of what the Ordinance should be, such as where a funeral home should be located; rather, its function is to enforce the Ordinance. Thus, we disagree with the Borough's contention that the Board's decision was supported by the Ordinance and Pennsylvania law.

## Conclusion

Therefore, construing the Ordinance expansively such that Appellee is afforded the broadest possible use and enjoyment of its land, we conclude that the property's principal use would be a funeral home because the size of the crematory use is minimal and the building contains facilities to perform services typically offered by a funeral home. Additionally, the property meets the necessary criteria to qualify as a funeral home under Pennsylvania law and Appellee hired a supervisor, which is necessary to offer funeral services to the public.

Accordingly, the trial court's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

River's Edge Funeral Chapel and
Crematory, Inc.

           v.

The Zoning Hearing Board of
Tullytown Borough

Appeal of:  The Borough of Tullytown

:
:
:   No. 22 C.D. 2016
:
:
:
:
:
:
:

## ***ORDER***

      AND NOW, this 16th day of November, 2016, the December 22, 2015 order of the Court of Common Pleas of Bucks County is affirmed.

 

_____
PATRICIA A. McCULLOUGH, Judge